OPINION OF THE COURT
Jasen, J.
The critical issue common to these appeals is whether adminis *173 trative delay in adjudicating the final rate of Medicaid reimbursement violated the directive of the State Administrative Procedure Act that hearings be conducted within a reasonable time.
Petitioners are residential health care facilities licensed by the Commissioner of Health pursuant to Public Health Law article 28. At the times relevant to these proceedings, petitioners participated in the joint Federal-State Medicaid program. (Social Security Act, tit XIX, 42 USC § 1396 et seq.; Social Services Law § 363 et seq.) The facilities were compensated for services provided to eligible Medicaid recipients by local Social Services districts, at rates established by the Commissioner of Health and approved by the Director of the Budget. The rate-making methodology of the Department of Health,[1] a cost-based prospective reimbursement system, required each facility to submit an annual report of actual costs to the Department of Health. The reported costs for the base period were audited by the Department to determine which costs were allowable under Department regulations. The allow-' able reported costs, adjusted to account for inflation, were then used to establish a facility’s rate for the following rate year.
Upon completion of the audit, each residential health care facility is afforded a closing conference, at which time the facility may produce additional documentation in support of its stated position. (10 NYCRR 86-2.7 [d].) A facility may initiate a bureau review of the audit to challenge specific items of the audit report. (10 NYCRR 86-2.7 [e].) Within 30 days of receipt of the determination of the bureau review, a facility may initiate a hearing to refute those items of the audit report adverse to the interests of the residential health care facility. (10 NYCRR 86-2.7 [f].)
CORTLANDT NURSING HOME
The Cortlandt Nursing Home (Cortlandt) filed cost reports with the Department of Health (Department) for the years 1969 and 1970, which, respectively, were used to calculate the facility’s Medicaid reimbursement rates for the periods July 1, 1970 through June 30,1971, and July 1,1971 through June 30,1972. On or about March 30,1976, the Department advised Cortlandt that it had completed the audit of its 1969 and 1970 reported costs and that based upon the audit, it was disallowing certain expen *174 ses that the facility had claimed during 1969 and 1970, and for which Cortlandt had been reimbursed for rate period ending June 30, 1972. Cortlandt thereafter administratively appealed the Department’s determination, and the Department issued a notice of hearing on May 1,1979. The administrative hearing was commenced on June 25, 1979, and continued intermittently through July 1,1980. The administrative law judge issued his report on August 28,1981, and the Commissioner of Health issued his order on January 26,1982. The Commissioner’s order upheld many of the disallowances set forth in the audit, and directed that a Medicaid rate be promulgated for the facility reflecting the retroactive adjustments set forth therein.
Cortlandt then commenced this article 78 proceeding seeking a judgment declaring the order of the Commissioner of Health dated January 26, 1982 null and void and prohibiting respondents from recouping or attempting to recoup overpayments established by the Commissioner’s order of January 26,1982. The gravamen of Cortlandt’s petition was that respondents’ efforts to recoup Medicaid overpayments were time-barred under the doctrine of loches and the Statute of Limitations. Supreme Court, Albany County, granted Cortlandt’s petition and permanently enjoined respondents from undertaking any further action to recover Medicaid overpayments. The Appellate Division, Third Department, modified the judgment of Supreme Court by reversing the determination declaring the actions of respondents illegal, but affirmed the permanent injunction against any recoupment of Medicaid overpayments. This court granted leave to appeal.
HIGHLAND NURSING HOME
The Highland Nursing Home (Highland) filed cost reports with the Department for the years 1970, 1971 and 1972, which were utilized to calculate its Medicaid reimbursement rate for the periods beginning July 1,1972 and ending December 31,1974. On or about June 2,1976, the Department advised Highland that it had completed an audit of its 1970,1971 and 1972 reported costs and that based upon the audit, adjustments would be made in the facility’s Medicaid reimbursement rates for the periods beginning July 1,1972 and ending December 31,1974. Thereafter, Highland initiated an article 78 proceeding to enjoin any attempted retroactive revision in rates without affording the facility a hearing. Supreme Court, Albany County, on March 9,1977, enjoined any recoupment without a hearing. The Appellate Division, Third Department, modified the judgment of Supreme Court on November *175 2, 1978 and ordered the matter to be remanded to the Commissioner of Health for the purpose of affording Highland a full administrative hearing. (Portnick v Whalen, 65 AD2d 827.)
The Commissioner of Health mailed a notice of hearing to Highland in June of 1980. Although no hearing has been held, it has been noted by respondents, and has not been rebutted by petitioners, that any failure to conduct a hearing in accordance with the order of the Appellate Division has been upon the mutual consent of the involved parties. On or about January 25,1982, Highland was advised by respondent, Commissioner of Social Services of St. Lawrence County, that recoupment of Medicaid overpayments, a sum of $83,319.33, would be commenced. Contending that recoupment would be time-barred, Highland commenced this article 78 proceeding to prevent respondents from effectuating recoupment of Medicaid overpayments as proposed in the January 25, 1982 letter of respondent. Supreme Court, Albany County, granted Highland’s petition, thus enjoining recoupment. This judgment was modified by the Appellate Division, Third Department, by reversing so much of Supreme Court’s judgment as held respondents’ actions illegal, and affirmed the permanent injunction upon recoupment by respondents of Medicaid overpayments. Leave to appeal was granted by this court.
KING STREET HOME
The King Street Home (King Street) filed cost reports with the Department for the years 1970,1971,1972 and 1973, which were used, respectively, to calculate King Street’s Medicaid reimbursement rates for the periods July 1, 1971 through June 30, 1972, July 1,1972 through December 31,1973, and the calendar years 1974 and 1975. Thereafter, the Department completed an audit of the foregoing cost reports and determined that certain reported expenses should be disallowed. By letter dated March 21, 1977, King Street received an audit report and revised rate computation sheet relating to its 1970 cost reports. By letter dated April 19,1978, King Street received another audit report and revised rate computations sheet relating to its 1971,1972 and 1973 cost reports. King Street requested a bureau review (10 NYCRR 86-2.7 [e]), and was notified by the Department of the results of the review by letter dated January 21, 1980. Thereafter, the King Street facility requested an administrative hearing (10 NYCRR 86-2.7 [f]). On or about May 4,1982, the Department served a notice of hearing upon King Street, scheduling a hearing to commence on June 2, 1982 to address whether the Department cor *176 rectly disallowed certain expenses in its audit. King Street, asserting that recoupment was barred under the doctrine of loches and the Statute of Limitations, commenced this article 78 proceeding to preclude respondents from recouping Medicaid over-payments. As in the Cortlandt and Highland proceedings, Supreme Court, Albany County, granted King Street’s petition, the Appellate Division, Third Department, modified the judgment of Supreme Court, yet upheld the permanent injunction, and leave to appeal was granted by this court.
BROADACRES SKILLED NURSING FACILITY
The Broadacres Skilled Nursing Facility (Broadacres) filed cost reports with the Department for the years 1971,1972,1973 and 1974, which, respectively, were used to calculate the facility’s Medicaid reimbursement rates for the periods July 1, 1972 through December 31,1973, the calendar year 1974, the calendar year 1975, and January 1,1976 through March 31,1977. In 1981, the Department advised Broadacres that it had completed the audit of the facility’s reported costs for the years 1971-1974, and that based upon the audit, it was disallowing certain reported costs. Broadacres requested a bureau review to assess the audit findings. By letter dated September 9, 1981, the Department informed Broadacres of the results of the bureau review and the rate adjustments for the period July 1,1972 through December 31,1977. Broadacres then requested an administrative hearing, and on or about September 16, 1982, the Department served a notice of hearing upon Broadacres, scheduling a hearing for October 28, 1982. By mutual consent of the parties, the hearing was adjourned until December 16, 1982, and again adjourned until February 1983.
On or about January 24,1983, Broadacres commenced this article 78 proceeding in Supreme Court, Oneida County, seeking, inter alla, a judgment preventing retroactive adjustment of its Medicaid reimbursement rates, and preventing the Department from recouping past overpayments. Supreme Court, by judgment entered May 11, 1983, granted Broadacres’ petition and enjoined the retroactive adjustment of rates. Upon reargument, Supreme Court adhered to its original determination denying the motion to dismiss the petition. By order dated November 7,1984, the Appellate Division, Fourth Department, adopted the reasoning of Matter of Cortlandt Nursing Home v Axelrod (99 AD2d 105, 106) and unanimously affirmed the order of Supreme Court. The Appellate Division, thereafter, certified the following question to this court: "Was the order of this court entered November 7,1984 properly made?”
*177 For the reasons that follow, we now reverse the order of the Appellate Division, Third Department, relating to the proceeding in Cortlandt, modify the orders of the Appellate Division, Third Department, relating to the proceedings in Highland and King Street, and we affirm the order of the Appellate Division, Fourth Department, entered in the Broadacres proceeding and answer the certified question in the affirmative.
After years of study, the State Administrative Procedure Act was adopted in 1975 to guarantee that the actions of administrative agencies conform to uniform, sound and equitable standards. (State Administrative Procedure Act § 100, L 1975, ch 167; Gifford, The New York State Administrative Procedure Act: Some Reflections Upon Its Structure and Legislative History, 26 Buffalo L Rev 589.) State Administrative Procedure Act § 301 (1) provides that "[i]n an adjudicatory proceeding, all parties shall be afforded an opportunity for hearing within reasonable time”. This section places an affirmative duty upon the State to conduct adjudicatory proceedings within "reasonable time”, thus abrogating the common-law view that loches may not be interposed as a defense against the State when acting in a governmental capacity and the public interest.[2] The Third and Fourth Departments, construing this statute in the context of the instant appeals, have held that a 10-year delay in reaching a final rate determination by an administrative agency is unreasonable as a matter of law, and the Department of Health should permanently be enjoined from recoupment of Medicaid overpayments. This view should be rejected. The passage of time, standing alone, does not, under the circumstances presented by these appeals, serve as a basis for judicial intervention, with peremptory effect, into the administrative process. (Matter of Sarkisian Bros. v State Div. of Human Rights, 48 *178 NY2d 816, 818; Heckler v Day, 467 US 104; INS v Miranda, 459 US 14, 18.) In determining whether a period of delay is reasonable within the meaning of State Administrative Procedure Act § 301 (1) , an administrative body in the first instance, and the judiciary sitting in review, must weigh certain factors, including (1) the nature of the private interest allegedly compromised by the delay; (2) the actual prejudice to the private party; (3) the causal connection between the conduct of the parties and the delay; and (4) the underlying public policy advanced by governmental regulation.
To analyze the nature of petitioners’ right to retain possession of Medicaid overpayments, it is first necessary to review the regulatory conditions under which such payments were made by the State and accepted by petitioners. Pursuant to regulations governing the audit of residential health care facilities receiving State reimbursement for costs incurred, petitioners are charged with the knowledge that any rate of payment will be construed to represent a provisional rate until an audit is performed and completed[3] and that the required fiscal and statistical reports filed with the Department are subject to audit for a period of six years from the date of their filing.[4] It is undisputed that the Department conducted the audits of petitioners’ reported costs within the six-year provision of limitations. (10 NYCRR 86-2.7.)
 This is not a case in which petitioners have lost any legal right, either vested or contingent. (See, Heckler v Community Health Servs., 467 US 51, 104 S Ct 2218, 2225.) Petitioners knew, or should have known, that any payment certified by the Department was wholly inchoate until such time as the audit of *179 cost reports, upon which the reimbursement rates were based, was performed and completed. The interest sought to be protected by the instant proceedings is the retention of public moneys which petitioners never should have received in the first place. (Heckler v Community Health Servs., supra.) Recognizing that the cost reports were subject to audit within six years from the filing date or date due, and were, in fact, so audited, the nature of petitioners’ right to initial overpayments is provisional, not proprietary.
Concomitant with the fact that petitioners had no entitlement to Medicaid payments until audits were performed and completed, petitioners had no right to a full administrative hearing until subsequent to the audit, or the bureau review, if requested. State Administrative Procedure Act § 301 (1) requires an agency to commence a hearing within reasonable time of the date of the commencement of the adjudicatory proceeding. Under governing regulation, the onus was upon petitioners to request an administrative hearing. (10 NYCRR 86-2.7 [f].) Thus, the relevant inquiry, when considering the reasonableness of the administrative delay in question, focuses upon the period between the date the hearing was requested and the date the hearing was conducted or scheduled.
In Cortlandt, the Department issued the audit on March 30, 1976, and, shortly thereafter, Cortlandt requested a hearing which was commenced on June 25,1979. The properly computed period of administrative delay was approximately three years. In Highland, the Department issued the audit on June 2,1976, and, shortly thereafter, without requesting a hearing before the Department, Highland initiated an article 78 proceeding. The Appellate Division, Third Department (sub nom. Portnick v Whalen, 65 AD2d 827, supra), remanded the matter for a hearing and, accordingly, a notice of hearing was issued by the Department in June 1980. No hearing has been held upon mutual consent of the parties. Since a hearing was not requested prior to initiating the article 78 proceeding, there was no cognizable administrative delay. In King Street, the audit was issued on March 21,1977, the bureau review results were issued on January 21,1980, and the administrative hearing scheduled for June 2,1982. Prior to the scheduled hearing date, King Street commenced this proceeding. The approximate period of delay in scheduling a hearing was two and one-half years. In Broadacres, the audit was issued in 1981, the bureau review findings were issued on September 9,1981, and administrative hearing scheduled for October 28,1982. No hearing has been concluded, by mutual consent of the parties. The ap *180 proximate period of administrative delay was one year. Neither petitioners’ assertion that the delay at issue is 12 years (brief for petitioners Cortlandt, Highland and King Street, at 9) nor the Appellate Division’s view that the administrative delay has been 10 years (Matter of Cortlandt Nursing Home v Axelrod, 99 AD2d 105, 109, supra) comports with the record.
Preliminarily, it should be noted that, absent extraordinary circumstances, a court may not intervene in an administrative proceeding, for reason of adjudicatory delay, until a hearing has been held and an official order rendered. (Note, Judicial Acceleration of the Administrative Process: The Right to Relief From Unduly Protracted Proceedings, 72 Yale LJ 574, 577-578.) It is within the province of the administrative agency, in the first instance, to determine upon a plenary hearing the cause of the delay, the interests implicated in the proceeding, and whether substantial prejudice to the facility has resulted from the administrative delay. (Goodman & Co. v New York Tel. Co., 309 NY 258, 267.) Judicial intervention prior to the rendition of a final administrative order is contraindicated by considerations of separation of powers (O’Brien, APA and the Judiciary, 7 Harv J of L & Pub Pol 443) and ripeness (New York State Inspection, Sec. & Law Enforcement Employees v Cuomo, 64 NY2d 233, 240; Siegel, NYS Law Digest, No. 305, May 1985, at 1-2). There can be no determination by this court as to the reasonableness of the administrative delay in Highland and King Street, wherein no hearing has been conducted and we are limited to granting mandamus to compel hearings. In Broadacres, we are even further limited by the certified question to a determination whether an article 78 proceeding lies. Cortlandt has proceeded to a final administrative determination and we are thereby empowered to determine the reasonableness of the administrative delay.
In determining whether the period of administrative delay of approximately three years in Cortlandt was reasonable within the meaning of State Administrative Procedure Act § 301 (1), certain factors, in addition to the nature of petitioners’ interests, must be considered. Critical to an assessment of the reasonableness of administrative delay is whether the private party has incurred substantial prejudice by reason of the delay. Where administrative delay has significantly and irreparably handicapped a private party in mounting a defense in an adversary administrative proceeding, the agency, or court reviewing a final administrative order, is authorized to dismiss the proceeding. (See, Occidental Life Ins. Co. v EEOC, 432 US 355, 373; Equal Employment *181 Opportunity Commn. v Liberty Loan Corp., 584 F2d 853, 854-857 [8th Cir 1978]; Goldman, Administrative Delay and Judicial Relief, 66 Mich L Rev 1423, 1453-1454.)
Cortlandt asserts that prejudice from the delay is obvious, and that there comes a point where the extent of the delay speaks for itself and becomes intolerable. Petitioner further suggests, in conclusory form, that the lapse of time hinders witnesses’ ability to recall facts and that recoupment or adjustment threatens the operational and financial viability of the facility. Petitioner does not demonstrate the manner by which administrative delay handicapped its defense efforts at the administrative hearing. Moreover, petitioner does not contend that the administrative delay precluded expansion of services or caused curtailment of existing services.[5] Where a facility operates on a provisional rate of reimbursement which may reflect an unliquidated financial liability, it is aware of the risk of recoupment or adjustment.
The causal relationship between the conduct of the agency and administrative delay is another critical factor to be considered in determining whether said delay was unreasonable under the circumstances. A court should be extremely reluctant to hold agency inaction unreasonable where the delay is attributable to a lack of resources. (Note, Judicial Acceleration of the Administrative Process: The Right to Relief From Unduly Protracted Proceedings, 72 Yale LJ 574, 584; Kaufman, Judicial Review of Agency Action: a Judge’s Unburdening, 45 NYU L Rev 201, 207.) Also, administrative delay may be justifiable when its source lies in the complexity of the issues to be resolved or in the time-consuming nature of the remedy. (Goldman, Administrative Delay and Judicial Relief, 66 Mich L Rev 1423, 1449.) Where, however, agency proceedings are demonstrated to be repetitive, purposeless and oppressive (Deering Milliken v Johnston, 295 F2d 856, 868 [4th Cir]), or where delay obtains by reason of an agency’s departure from its governing procedural regulations (see, In re Larsen, 17 NJ Super 564, 577, 86 A2d 430 [Brennan, J., concurring]), the administrative process may be stripped of the presumption of regularity. In considering the conduct of the Department in Cortlandt, we cannot say, on the record before us, that the administrative delay was unreasonable.
*182 It must further be determined whether the conduct of the private party involved in the adjudicatory proceeding was responsible, in whole or in part, for the administrative delay. (Goldman, Administrative Delay and Judicial Review, 66 Mich L Rev 1423, 1449-1450.) It does not appear upon this record that the Cortlandt facility caused administrative delay; however, Highland, King Street and Broadacres may well be found to be responsible, at least in part, for the administrative delay. Although hearing dates were scheduled in Highland, KingStreet and Broad-acres, the opportunity for a hearing was waived, and said petitioners opted for judicial relief. The responsibility for delay occasioned by resort to the judicial process, where the agency was prepared to adjudicate petitioners’ claims, rests with petitioners. Indeed, in Highland, petitioner immediately sought judicial redress without even requesting an administrative hearing. In Broadacres, as well as Highland, the lack of a final administrative adjudication resulted by mutual consent of the parties. The apportionment of responsibility for the delay, however, is properly a function of the administrative agency, upon a plenary hearing, and should not be resolved by the courts in the first instance.
Also to be considered is whether an important interest, implicating matters of broad public concern, underlies governmental regulation or action. (INS v Miranda, 459 US 14, 19, supra; Goldman, Administrative Delay and Judicial Review, 66 Mich L Rev 1423, 1452-1453.) There exists a strong, defined public policy of this State to recover public funds improperly received. (Matter of Daleview Nursing Home v Axelrod, 62 NY2d 30; People v Journal Co., 213 NY 1, 8; Executive Law § 63-c [1].) The public policy underlying recoupment of Medicaid overpayments, or adjustment of rates based upon past overpayments, must be balanced in conjunction with the nature of the right sought to be protected, prejudice to petitioners, and cause of administrative delay, when assessing whether administrative delay is reasonable. We conclude that in Cortlandt, the important public policy of recovering public funds wrongfully received is directly implicated.
As the foregoing discussion has established, petitioners have not demonstrated a clear legal right to retain Medicaid over-payments. Moreover, administrative delay may not be said to deprive the agency of jurisdiction. (Matter of Geary v Commissioner of Motor Vehicles, 59 NY2d 950; Matter of Sarkisian Bros. v State Div. of Human Rights, 48 NY2d 816, 818, supra.) Thus, petitioners’ article 78 proceedings, in the nature of prohibition, do not lie. *183 (Matter of Schumer v Holtzman, 60 NY2d 46, 51; 2 Cooper, State Administrative Law, at 659-662.) Accordingly, in Cortlandt the proceeding should be converted to an action for declaratory judgment (CPLR 103 [c]; Siegel, NY Prac § 563), and the remaining matters should be treated as proceedings in the nature of mandamus.
The Cortlandt proceeding, wherein an administrative hearing has been conducted and a final order rendered, should be converted to an action for declaratory judgment. Inasmuch as Cortlandt’s interest in the Medicaid overpayments was provisional in nature, Cortlandt has not demonstrated substantial prejudice resulting from the delay in the scheduling of a hearing, and an important public policy underlies the governmental action at issue, the administrative delay of three years was not unreasonable under State Administrative Procedure Act § 301 (1). The proceedings in Highland and King Street, wherein administrative hearings have not been concluded, should be treated as proceedings in the nature of mandamus (2 Cooper, State Administrative Law, at 656-657; Jaffe, Judicial Control of Administrative Action, at 176) to compel the Department to conduct a hearing in accordance with governing regulations (10 NYCRR 86-2.7 et seq.). In Broad-acres, the order affirming the dismissal of a motion to dismiss the petition should be affirmed and the question certified answered in the affirmative inasmuch as the article 78 proceeding in the nature of mandamus lies.
Accordingly, in Matter of Cortlandt, the order of the Appellate Division should be reversed, with costs, the proceeding converted to an action for declaratory judgment and judgment granted declaring that appellants are not precluded from seeking recoupment of Medicaid overpayments made to petitioner. In Matter of Highland and Matter of King Street, the orders of the Appellate Division should be modified, with costs to appellants, by directing respondents to hold hearings in accordance with this opinion and, as so modified, affirmed. In Matter of Broadacres, the order of the Appellate Division should be affirmed, with costs, and the question certified answered in the affirmative.
Judges Meyer, Simons, Kaye, Alexander and Titone concur; Chief J udge Wachtler taking no part.
In Matter of Cortlandt Nursing Home v Axelrod: Order reversed, with costs, proceeding converted to an action for declaratory judgment and judgment granted declaring that appellants are not precluded from seeking recoupment of Medicaid overpayments made to petitioner.
*184 In Matter of Highland Nursing Home v Axelrod and Matter of King St. Home v Axelrod: Orders modified, with costs to appellants, in accordance with the opinion herein and, as so modified, affirmed.
In Matter of Broadacres Skilled Nursing Facility v Axelrod: Order affirmed, with costs, and question certified answered in the affirmative.

. The rates of reimbursement are established pursuant to regulations promulgated by the New York State Hospital Review and Planning Council and approved by the Commissioner of Health. (Public Health Law § 2803 [2].) The Department’s rate-making methodology was formerly embodied in 10 NYCRR part 86, and today is embodied in 10 NYCRR subpart 86-2.

. It is settled that the equitable doctrine of loches may not be interposed as a defense against the State when acting in a governmental capacity to enforce a public right or protect a public interest. (People v Van Rensselaer, 8 Barb 189, 197; Matter of Levey [Catherwood], 33 AD2d 1066, 1067 [Cooke, J,]; New York State Water Resources Commn. v Liberman, 37 AD2d 484, appeal dismissed 30 NY2d 516; Utah Power & Light Co. v United States, 243 US 389, 409; United States v Kirkpatrick, 9 Wheat [22 US] 720, 735 [Story, J.].) Utilization of loches, based upon an administrative agency’s delay, is precluded in a majority of jurisdictions. (Goldman, Administrative Delay and Judicial Relief, 66 Mich L Rev 1423, 1444, n 50; Precious Metals Assoc. v Commodity Futures Trading Commn., 620 F2d 900, 909-910.) This view stems from considerations of sovereign immunity, protection of the public fisc and separation of powers. (Matter of Daleview Nursing Home v Axelrod, 62 NY2d 30, 34.) The defense of loches, specifically interposed by Cortlandt and King Street in their verified petitions to enjoin recoupment of Medicaid overpayments, is unavailing.

. 10 NYCRR section 86-2.7 (a) provides: "All fiscal and statistical records and reports shall be subject to audit. All underlying books, records and documentation which formed the basis for the fiscal and statistical reports, filed by the residential health care facility with the department, shall be kept and maintained by the facility for a period of time not less than six years from the date of filing, or the date upon which the fiscal and statistical records were to be filed, whichever is the later date. In this respect, any rate of payment certified by the State Commissioner of Health based on the initial submission of base year data and reports will be construed to represent a provisional rate until such audit is performed and completed, at which time such rate or adjusted rate will be construed to represent the audited rate.” (Emphasis added.) (See also, former 10 NYCRR §§ 86.8, 86.16.)

. 10 NYCRR section 86-2.7 (c) provides: "The required fiscal and statistical reports shall be subject to audit for a period of six years from the date of their filing with the department or from the date when due, whichever is later. This limitation shall not apply to situations in which fraud may be involved or where the provider or an agent thereof prevents or obstructs the commissioner from performing an audit pursuant to this section.” (See also, former 10 NYCRR § 86.8.)

. Compare Matter of Utica Cheese v Barber (49 NY2d 1028), wherein the administrative delay of the Commissioner of the Department of Agriculture and Markets, in acting upon an application for a milk dealer’s license, precluded petitioner from engaging in economic activity.