In the Matter of WESTLEDGE NURSING HOME, Petitioner, v DAVID AXELROD, as Commissioner of Health of the State of New York, et al., Respondents.

Third Department, December 5, 1985

### APPEARANCES OF COUNSEL

*O'Connell & Aronowitz, P. C. (Salvatore D. Ferlazzo* and *Cornelius D. Murray* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Alan W. Rubenstein* and *William J. Kogan* of counsel), for respondents.

### OPINION OF THE COURT

WEISS, J.

Petitioner is a licensed residential health care facility (Public Health Law art 28) participating in the Medicaid program, obtaining reimbursement for services to patients eligible for Medicaid benefits at rates established by respondent Commissioner of Health (hereinafter Commissioner). Under the methodology employed, the Medicaid reimbursement rate for each facility is established prospectively by review of operating costs for a prior base period adjusted to allow for inflation (10 NYCRR subpart 86-2 [eff Sept. 30, 1976], formerly 10 NYCRR part 86). A facility's cost reports must be submitted to the Department of Health (hereinafter Department) no later than 120 days after the close of the cost reporting year (10 NYCRR 86-2.2 [b]). These base year cost reports are then subject to audit, and retroactive rate adjustments may be made when overpayments are discovered (10 NYCRR 86-2.7). Rates for petitioner were established in this manner using cost reports from 1969 through 1974 to establish rate periods from July 1, 1970 through March 31, 1977.[1]

---

1. The cost report-filing date-rate period schedule is as follows:

| Base Period | Filing Date | Rate Period |
|---|---|---|
| 1969 | | July 1, 1970—June 30, 1971 |
| 1970 | May 1, 1971 | July 1, 1971—December 31, 1972 |
| 1971 | May 1, 1972 | 1973 |
| 1972 | May 1, 1972 | 1974 |
| 1973 | May 1, 1973 | 1975 |
| 1974 | May 1, 1974 | January 1, 1976—March 31, 1977 |

Several years after rates were established and paid pursuant to this schedule, the Department conducted an audit of the 1969 cost reports affecting the rate period July 1, 1970 to June 30, 1971. Petitioner's challenges to certain cost disallowances were ultimately rejected by this court in *Matter of Westledge Nursing Home v Axelrod* (90 AD2d 915). Recoupment, however, was postponed at that time.

On or about March 31, 1977, the Department issued an audit report of petitioner's 1970 cost report; audit reports of petitioner's 1971, 1972, 1973 and 1974 cost reports were issued on or about April 3, 1978. Each audit provided for downward adjustments of the allowable costs. Petitioner duly protested and requested a bureau review (10 NYCRR 86-2.7 [e]), which was completed in June of 1979. As a result, certain expenses for which petitioner had been reimbursed were disallowed. After petitioner filed a letter of protest (10 NYCRR 86-2.7 [f]), the Department issued a notice in March 1982 that a hearing would be held commencing May 26, 1982, in which some 19 issues were set for determination. Pursuant to a negotiated stipulation, 17 of the disputed items were resolved between the parties, leaving for resolution item 3, dealing with the disallowance of certain interest expenses, and item 14, which concerned a reduced per diem adjustment for increased salaries in the rate period beginning July 1, 1971. By order entered March 14, 1983, the Commissioner adopted the report of the administrative law judge confirming the Department's position as to both items 3 and 14. By letter dated June 20, 1983, the Department advised petitioner that its rates for the cost years 1969 through 1974 were being retroactively revised. Specifically, a recoupment schedule established that petitioner had been overpaid in Medicaid reimbursements a total of $280,236, consisting of $42,860 for the period July 1, 1970 to June 30, 1971 and $237,376 for the period July 1, 1971 to March 31, 1977. In September 1983, the Department began to recoup approximately $12,239 per month in Medicaid revenue out of petitioner's current Medicaid reimbursement rate.

In this CPLR article 78 proceeding, petitioner alleges that the retroactive rate revisions were barred by unconscionable and inordinate delay and/or the Statute of Limitations, or in the alternative, that the order determining disallowances of costs in the audit years 1970 through 1974 was illegal, arbitrary and capricious, and not supported by substantial evidence.

■ Initially, we observe that petitioner is precluded from challenging so much of the recoupment as is attributable to the audit of its 1969 cost reports (i.e., the July 1, 1970 to June 30, 1971 rate period). The doctrine of res judicata may be applied to an administrative action, particularly where disputed issues of fact are properly before an agency acting in an adjudicative capacity *(see, Matter of Erwin v New York State Employees' Retirement Sys.,* 106 AD2d 836). Here, it is quite clear that petitioner had adequate opportunity to litigate the specific cost disallowances attributed to the 1969 cost reports. An administrative hearing was held, following which the Commissioner sustained the disallowances. Thereafter, in *Matter of Westledge Nursing Home v Axelrod* (90 AD2d 915, *supra),* this court expressly sustained the determination of the Commissioner. Having duly litigated its claim with respect to the audit of the 1969 cost reports, petitioner is barred by the doctrine of res judicata from challenging the recoupment of overpayments attributable to that audit, viz., a sum of $42,-860.

■ We further conclude that so much of the recoupment which is attributable to the 17 issues settled by the parties in the May 1982 hearing may no longer be challenged. Petitioner does not seriously dispute the fact of this settlement, which was made on the record during the course of an administrative hearing *(see,* State Administrative Procedure Act § 301 [5]). Consequently, we are of the view that the parties should be bound by the bargain struck.

We turn next to whether the Department may further recoup the disallowance of certain interest payments (item 3) and labor costs (item 14), as determined in the order of March 14, 1983. This court has recently reiterated that the six-year Statute of Limitations contained in CPLR 213 (2) is inapplicable to an administrative attempt to recoup Medicaid coverages *(Matter of Blase v Axelrod,* 111 AD2d 1015, *lv granted* 66 NY2d 602). The issue distills to whether the recoupment efforts in this case have been undertaken in a reasonable time *(supra).*

■ In *Matter of Cortlandt Nursing Home v Axelrod* (66 NY2d 169, *revg* 99 AD2d 105), the Court of Appeals recently clarified that the mere passage of time does not of itself "serve as a basis for judicial intervention, with peremptory effect, into the administrative process" *(supra,* p 177). Several factors must be examined to determine whether a period of delay is reasonable within the context of State Administrative Proce-

dure Act § 301 (1), including: "(1) the nature of the private interest allegedly compromised by the delay; (2) the actual prejudice to the private party; (3) the causal connection between the conduct of the parties and the delay; and (4) the underlying public policy advanced by governmental regulation" *(supra,* p 178). Examination of these factors in the instant setting leads us to conclude that the Department should not be precluded from seeking recoupment of the Medicaid overages made to petitioner.

As *Cortlandt* instructs, the nature of petitioner's right to initial overpayments is provisional, pending the performance and completion of the Department audit *(supra,* p 178; 10 NYCRR 86-2.7 [a]). The record confirms that the Department conducted the audits of petitioner's reported costs within the six-year limitations period (10 NYCRR 86-2.7 [c]). Concomitantly, petitioner's right to a full administrative hearing did not arise until the audit, or, in this case, the bureau review was completed. Thus, our inquiry in determining the reasonableness of the administrative delay must focus on the period between the date a hearing was requested and the date the hearing was actually conducted or scheduled *(supra,* pp 180-181). The chronology of events is determinative.

Here, the audits were issued in March 1977 and April 1978, the bureau review results were issued in June 1979 and the administrative hearing scheduled for May 26, 1982. Although the record fails to establish the exact date of petitioner's hearing request upon receipt of the bureau review results,[2] the approximate period of delay in scheduling a hearing was, at most, less than three years. Absent a demonstration of substantial prejudice resulting from the delay, it is eminently clear from the *Cortlandt* decision that an administrative delay of three years is not unreasonable under State Administrative Procedure Act § 301 (1) (66 NY2d 169, 180, *supra).*

Upon our review of the record, petitioner has failed to make the necessary showing of substantial prejudice. That the Department will recoup the Medicaid overages to the obvious financial disadvantage of petitioner is not dispositive, for it simply means that petitioner will have to return funds it was not entitled to receive in the first place *(see, Heckler v Community Health Servs.,* 467 US 51, 104 S Ct 2218, 2225). This was a risk petitioner was aware of, or should have been aware of,

_____

2. A hearing request must be made within 30 days of receipt of the determination of the bureau review (10 NYCRR 86-2.7 [f]).

since the inception of its participation in the Medicaid program. Nor has there been any demonstration that petitioner's ability to expand will be precluded or its existing services curtailed *(Matter of Cortlandt Nursing Home v Axelrod, supra,* p 181). It is also noteworthy that while there is no indication that petitioner was responsible for any delay, the presumption of regularity attendant to the Department's procedures has certainly not been overcome. Finally, as in *Cortlandt,* the strong public policy of this State to recover funds improperly received is directly implicated here *(supra,* p 182).

■ ■ Based on the foregoing, we conclude that the three-year administrative delay here was not unreasonable within the meaning of State Administrative Procedure Act § 301 (1). Since the agency has not been deprived of jurisdiction, it is necessary to point out that petitioner's CPLR article 78 proceeding, in the nature of prohibition, does not lie *(Matter of Cortlandt Nursing Home v Axelrod, supra,* pp *182-183). Accord-*ingly, we exercise our authority to convert the proceeding into an action for a declaratory judgment and to grant judgment in the Department's favor on the timeliness issue *(supra).*

■ It remains for consideration, however, whether respondents' determination to recoup overages related to items 3 (interest payments) and 14 (labor costs) is supported by substantial evidence in the record. Item 3 pertains to the interest incurred on personal loans of the facility operators, as set forth in the cost reports for 1970 through 1974. These loans created a source for salaries which were paid in excess of the Department's ceiling requirements. The Department ultimately disallowed these costs since the loans were not reasonably related to patient care or otherwise necessary for operational purposes *(see,* Medicare Provider Reimbursement Manual § 202.2; *see also,* 10 NYCRR 86-2.7 [a]; 86-2.20 [b]). The record indicates that the facility lost substantial sums of money in 1971, 1972, 1973 and 1974, during which period the operators drew salaries in excess of Departmental ceilings. This being the case, we find substantial evidence to support the determination that the interest incurred on the subject loans is not subject to reimbursement within the Medicaid methodology.

■ We reach a different conclusion with respect to item 14, pertaining to the per diem adjustment for increased salaries for the rate periods beginning July 1, 1971 and extending through 1973. In view of a new union agreement establishing substantially higher employee wages, both parties agreed to

annualize petitioner's labor costs incurred during July of 1971 (the first month of the new rate period) to arrive at the labor cost component of the rate. A problem arose when it was later discovered that July covered a five-week pay period and thus distorted the calculation. As a consequence, the Department revised the salary component to reflect Department-selected actual labor costs, which proved to be substantially lower. We find the adjustment improper. In the first place, it is quite clear that the parties acted in good faith in assuming that the first month of the rate period would be representative of the entire period. Moreover, the Department readily acknowledged that it did not use the "exact" figures submitted by the facility in setting the pertinent rate. The facility further erred in the Department's favor by failing to include the vacation pay component of its employment expenses in its estimate of labor costs. Secondly, retroactive rate adjustments are questionable where the overpayment is due, as here, to an error in judgment and not the consequence of mathematical miscalculations or the submission of false information (see, Matter of Delaview Nursing Home v Axelrod, 91 AD2d 1161, affd 62 NY2d 30; Hurlbut v Whalen, 58 AD2d 311, 318-319, lv denied 43 NY2d 643; see also, 10 NYCRR 86-2.13). In the final analysis, since the parties consented to a salary rate premised on the labor costs of July 1971, they should be bound by the terms of their agreement (see, Matter of Beekman-Downtown Hosp. v Whalen, 44 NY2d 124, 133-134).

MAHONEY, P. J., KANE, CASEY and LEVINE, JJ., concur.

Determination modified, with costs, by annulling so much thereof as permitted recoupment of overages due to item 14; proceeding converted to a declaratory judgment action insofar as it seeks a writ of prohibition and judgment granted declaring that respondents are not precluded from seeking recoupment of Medicaid overpayments made to petitioner, except as indicated in the decision herein; and, as so modified, confirmed.