*163 OPINION OF THE COURT
George B. Ceresia, Jr., J.
Since March 2000 the petitioner has served as president of the State University of New York Research Foundation (hereinafter Research Foundation).[1] By letter dated January 29, 2009 (referred to as a 15-day letter, see Executive Law § 94 [12] [a]) the respondent New York State Commission on Public Integrity (Commission) commenced an investigation of the petitioner pursuant to Executive Law § 94 (12). The investigation concerned the hiring and continued employment of a Research Foundation employee, one Susan Bruno (see Executive Law § 94 [12] [a]).[2] On May 13, 2011 the Commission issued what is known as a notice of reasonable cause to believe that a violation had occurred (hereinafter referred to as an NORC [see Executive Law § 94 (12) (b) and 19 NYCRR 941.3]). On May 18, 2011 petitioner’s counsel served a demand that the hearing on this matter commence on June 8, 2011.
The petitioner alleges that since commencement of the investigation he (and the Research Foundation) have cooperated with the Commission in its investigation by furnishing written responses and documents. It is indicated that despite the existence of statutory authority protecting the confidentiality of such investigations (see Executive Law § 94 [12] [a]), a newspaper article concerning the investigation appeared in a local newspaper (the Albany Times Union) on April 18, 2011. It is alleged that when the NORC was issued on May 13, 2011, it was simultaneously released to the media,[3] and that respondent Ginsberg thereafter appeared on television and radio to discuss the matter. The petitioner argues that the respondents have delayed the hearing, while trying the petitioner’s case in the media. The petitioner has commenced the above-captioned CPLR article 78 proceeding seeking an order directing that the *164 administrative hearing commence on June 8, 2011. He also requests that the respondents appoint an independent hearing officer to conduct the hearing, such appointment to be subject to the approval of the court.
The respondents oppose the petition, indicating that since January 2009, when the Commission commenced its investigation, the petitioner has resisted all efforts to secure his sworn testimony. The respondents seek dismissal of the petition, and cross-move for an order compelling the petitioner to comply with a subpoena dated May 13, 2011. The June 8, 2011 Hearing Date
The relief sought by petitioner is in the nature of mandamus to compel. The court is mindful that mandamus is an extraordinary remedy, available against an administrative officer only to compel the performance of a duty enjoined by law (see Klostermann v Cuomo, 61 NY2d 525, 539, 540 [1984]). It is appropriate only where the right to relief is clear and the duty sought to be enjoined is performance of an act commanded to be performed by law, purely ministerial and involving no exercise of discretion (Matter of Council of City of N.Y. v Bloomberg, 6 NY3d 380, 388 [2006]; Matter of Glenman Indus. & Commercial Contr. Corp. v New York State Off. of the State Comptroller, 75 AD3d 986, 989 [3d Dept 2010]; Matter of Hamptons Hosp. & Med. Ctr. v Moore, 52 NY2d 88, 96 [1981]; Matter of Legal Aid Socy. of Sullivan County v Scheinman, 53 NY2d 12, 16 [1981]; Matter of Maron v Silver, 58 AD3d 102, 124-125 [3d Dept 2008], Iv denied 12 NY3d 909 [2009]). As pointed out by the petitioner, certain time periods with respect to adjudicatory proceedings initiated by the Commission are specifically set forth in the Rules of the Commission on Public Integrity. For example, a notice of hearing must be served at least 20 calendar days in advance of the hearing (see 19 NYCRR 941.4 [a]). Once commenced, a hearing must generally be concluded within 180 days (see 19 NYCRR 941.10 [a]). Notably however, no specific time limit is set forth for commencement of a hearing.
The State Administrative Procedure Act recites that “in an adjudicatory proceeding, all parties shall be afforded an opportunity for hearing within reasonable time” (State Administrative Procedure Act § 301 [1]). In this instance, while a significant period of time has transpired since issuance of the 15-day letters on January 29, 2009 and January 6, 2010, it appears that this is due, at least in part, to petitioner’s unsuccessful litigation in 2010 to obtain an injunction to terminate the *165 investigation, and continued disagreement between the parties with regard to respondents’ efforts to secure petitioner’s sworn testimony. There has been no significant delay since issuance of the NORC on May 13, 2011. While the court is mindful that in situations involving extreme delay, mandamus will lie to compel the holding of a prompt hearing (see Matter of Blase v Axelrod, 67 NY2d 642 [1986]; Matter of King St. Home v Axelrod, 66 NY2d 169 [1985]; Matter of Utica Cheese v Barber, 49 NY2d 1028 [1980]; Matter of Williamsville Clare Bridge Operator v Novello, 6 AD3d 861 [3d Dept 2004]), the court finds no such delay here. Nor does the court discern any right as set forth in Executive Law § 94 or part 941 of the Rules of the Commission on Public Integrity (see 19 NYCRR part 941) by which the target to the investigation may unilaterally establish a hearing date (or deadline). Under such circumstances, the court finds that petitioner has failed to satisfy his burden of demonstrating a clear right to relief under his first cause of action.
Appointment of a Hearing Officer
As noted, the petitioner seeks an order appointing an independent hearing officer, subject to the court’s approval. Executive Law § 94 (9) (b) authorizes the Commission to appoint its staff. Section 941.13 (a) of the rules, entitled “Hearing Officer,” recites as follows:
“A hearing officer designated by the executive director shall conduct all hearings under these rules and shall exercise the power and authority of presiding officers or hearing officers as defined by the State Administrative Procedure Act (SAPA), any other pertinent statute and these regulations. The hearing officer shall be an individual who has in no way been involved with the case in question.”
The petitioner indicates that respondents Ginsberg and the Commission are currently the subject of an ongoing and active investigation by the Office of the State Inspector General with regard to possible violations of state law by respondents during the course of their investigation of the petitioner. It is alleged that the respondents are unable to designate an individual as hearing officer who has not been involved with the case because the entire agency is under review. No specific evidence is presented to establish that the hearing officer appointed by the Commission to preside over this matter would harbor personal bias against the petitioner in this matter and/or could not be impartial. Moreover, there already exists a statutory procedure for the handling of allegations of bias or lack of impartiality *166 during administrative hearings (see State Administrative Procedure Act § 303).[4] Under the circumstances, the court finds that petitioner’s second cause of action lacks merit and must be dismissed.
Respondents’ Motion to Compel Compliance with a Subpoena
Under Executive Law § 94 (16) (d), the Commission is empowered to “[c]onduct any investigation necessary to carry out the provisions of this section.” “Pursuant to this power and duty, the commission may administer oaths or affirmations, subpoena witnesses, compel their attendance and require the production of any books or records which it may deem relevant or material” (Executive Law § 94 [16] [d]). By way of contrast, section 941.14 of the Rules of the Commission on Public Integrity grants the hearing officer who presides at the adjudicatory hearing the power to sign and issue subpoenas (see 19 NYCRR 941.14). These powers are separate and distinct.
The record indicates that throughout February and March 2011, unsuccessful efforts were made by the Commission to make arrangements for petitioner’s voluntary appearance to give sworn testimony before the Commission without the necessity of issuing a subpoena. When that proved unsuccessful the Commission, on March 31, 2011, issued a subpoena, service of which was accepted by petitioner’s counsel without objection. In a letter dated April 8, 2011, petitioner’s counsel confirmed an agreement with the Commission whereby, in consideration of the Commission’s withdrawal of the March 31, 2011 subpoena, the petitioner would make himself available for a sworn interview on May 5, 2011. It was further agreed that the petitioner would thereafter be afforded an opportunity to *167 provide an unsworn statement or explanation concerning the matters under investigation. Notwithstanding the foregoing agreement petitioner’s counsel, on May 4, 2011, withdrew the offer to voluntarily testify, ostensibly by reason of continued leaks of information by the Commission to the media.
As noted, the NORC was issued on May 13, 2011. Accompanying the NORC was a new subpoena (of the same date) requiring petitioner to give testimony at a “Hearing” on May 25, 2011. In a hand-delivered letter dated May 25, 2011, petitioner’s attorney indicated that the petitioner would not be appearing that day to give testimony. He contended that the subpoena was defective in that a hearing had not yet been scheduled. He also indicated that inasmuch as an NORC has been issued, the investigatory phase of the administrative process was at an end, and the parties are now in the adjudicatory phase. In the papers in opposition to the motion, the petitioner’s attorney additionally argues that witness fees were not tendered as required under CPLR 2303 and 8001. The Commission, in response, maintains that there have been at least two instances in the past (unrelated to the instant investigation) where the Commission continued its investigation even after issuance of an NORC.[5]
Initially, from a careful review of the Commission’s motion papers, the court finds that the only subpoena for which enforcement is sought in the instant motion is the one dated May 13, 2011.[6] The court finds that the Commission did not seek enforcement here of the subpoena dated March 31, 2011.
The only guidance the court discerns with regard to whether an investigation may continue after issuance of an NORC is found in section 941.3 (a) of the Rules of the Commission on Public Integrity which recites, in part, as follows: “If the commission, subsequent to an investigation of a possible violation . . . determines that there is reasonable cause to believe that a violation has occurred, it shall send a notice of reasonable cause.” (19 NYCRR 941.3 [a] [emphasis supplied].) This wording strongly suggests that the drafters of the rule contemplated that the NORC would be issued at the conclusion *168 of the investigation, particularly as it relates to the target. This conclusion is supported by what appears to be a fairly sharp dividing line between the investigatory phase of the proceeding, where all matters must be kept confidential (see Executive Law § 94 [12] [a], last sentence) and the issuance of the NORC, which itself is a public document (see Executive Law § 94 [14]; 19 NYCRR 941.18 [a] [3]). In the court’s view the Commission could have, prior to issuance of the NORC, either sought enforcement of the March 31, 2011 subpoena (if it felt that was appropriate), or issued and served a new subpoena. The Commission did neither. The respondents have made it clear, both in their papers and during oral argument of this matter, that the intended purpose for obtaining petitioner’s testimony is for use during cross-examination of the petitioner at the hearing. The court finds that, in view of the fact that the Commission issued the NORC dated May 13, 2011, the investigatory phase of the administrative proceeding is at an end, as it relates to the petitioner. Since the Commission’s statutory grant of subpoena power is limited to the investigatory period the court finds that respondents have not demonstrated entitlement to an order compelling compliance with the subpoena. The court concludes that the Commission’s motion must be denied.
Lastly, in view of the foregoing, petitioner’s cause of action for an award of attorneys fees and incidental relief under CPLR 7806 will also be dismissed.
Accordingly, it is ordered and adjudged, that the petition be and hereby is dismissed; and it is ordered, that respondents’ motion to compel compliance with the subpoena dated May 13, 2011 is denied.

. The court understands that the petitioner has resigned from this position, effective June 15, 2011.

. A second 15-day letter issued by the respondent on January 6, 2010, superceded and replaced the first letter. The second was necessitated because the first letter referred to the hiring of Susan Bruno in 2003. In a letter dated April 10, 2009, petitioner’s counsel pointed out that the effective date of the Public Employee Ethics Reform Act, the statutory predicate for the instant investigation, was April 25, 2007. The 15-day letter dated January 6, 2010 clarified that the alleged misconduct which was the subject of the Commission’s investigation involved events occurring subsequent to the effective date of the legislation.

. The court observes that under Executive Law § 94 (17) (a) (3) the Commission must make an NORC available for public inspection and copying.

. State Administrative Procedure Act § 303, entitled “Presiding officers,” recites as follows:
“Except as otherwise provided by statute, the agency, one or more members of the agency, or one or more hearing officers designated and empowered by the agency to conduct hearings shall be presiding officers. Hearings shall be conducted in an impartial manner. Upon the filing in good faith by a party of a timely and sufficient affidavit of personal bias or disqualification of a presiding officer, the agency shall determine the matter as part of the record in the case, and its determination shall be a matter subject to judicial review at the conclusion of the adjudicatory proceeding. Whenever a presiding officer is disqualified or it becomes impractical for him to continue the hearing, another presiding officer may be assigned to continue with the case unless it is shown that substantial prejudice to the party will result therefrom.”

. In answer to a question posed by the court during oral argument of this matter, counsel for the respondents conceded that they have never been met with a challenge to a post-NORC subpoena issued for purposes of investigation (as opposed to appearance at a hearing).

. Respondents’ memorandum of law, on the last page, requested alternative relief seeking enforcement of the March 31, 2011 subpoena. This relief, not mentioned in the notice of motion or supporting affirmation, may not now be considered.