Matter of Clearview Ctr., Inc. v New York State Off. of The Medicaid Inspector Gen. (2019 NY Slip Op 03717)





Matter of Clearview Ctr., Inc. v New York State Off. of The Medicaid Inspector Gen.


2019 NY Slip Op 03717


Decided on May 9, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 9, 2019

526871

[*1]In the Matter of CLEARVIEW CENTER, INC., Appellant- Respondent,
v
NEW YORK STATE OFFICE OF THE MEDICAID INSPECTOR GENERAL et al., Respondents- Appellants.

Calendar Date: March 18, 2019

Before: Egan Jr., J.P., Lynch, Clark, Devine and Pritzker, JJ.


Manatt, Phelps & Phillips, LLP, Albany (James W. Lytle of counsel), for appellant-respondent.
Letitia James, Attorney General, Albany (Victor Paladino of counsel), for respondents-appellants.



MEMORANDUM AND ORDER
Clark, J.
Cross appeals from a judgment of the Supreme Court (Mackey, J.), entered August 30, 2017 in Albany County, which partially granted petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Office of the Medicaid Inspector General finding that petitioner received overpayments of certain supplemental Medicaid reimbursements.
Petitioner is a not-for-profit organization located in the City of Albany that provides, among other things, mental health and social services partially funded through the Medicaid program on a fee-for-service basis. During the time frame at issue here, petitioner received, in addition to its base rate for providing outpatient and day treatment mental health services, two different forms of supplemental Medicaid reimbursement: one for comprehensive outpatient program services (hereinafter COPS) (see 14 NYCRR former part 592) and another for community support program services (hereinafter CSP) (see 14 NYCRR 588.13, 588.14). The supplemental reimbursement rates for both programs were provider-specific and susceptible to annual adjustments (see 14 NYCRR 588.14 [d]; former 592.4 [e]). Additionally, both types of supplemental reimbursement were subject to an annual cap, which was also specific to the provider and could change from year to year. In practice, payment of supplemental reimbursement was not discontinued once a provider's disbursed supplemental payments reached the annual cap. Rather, any overpayment would be recouped through a subsequent reconciliation process (see 14 NYCRR 588.13 [d]; former 592.8 [d]). For this reason, COPS and CSP providers were advised that it was in their "best interest . . . to monitor their COPS [and CSP] revenue collections, and set aside" any overpayment for recovery during the reconciliation process (New York State Consolidated Fiscal Reporting and Claiming Manual at 63.1-63.2 [Sept. 2004]).
In November 2009, respondent Office of the Medicaid Inspector General (hereinafter OMIG), an independent office within the Department of Health, issued a draft audit report to petitioner, which informed petitioner that, in conjunction with respondent Office of Mental Health (hereinafter OMH), it had conducted an in-house review of the COPS and CSP supplemental payments received by petitioner in 2003, 2004 and 2005 and had determined that petitioner had received $356,229.68 in overpayments. Petitioner challenged the overpayment determination by letter, and, thereafter, OMIG issued a revised draft report that indicated "that an error existed in the earlier calculation" and that the corrected overpayment amount was $113,486. Once again, petitioner objected to and challenged the overpayment determination by letter. Nearly five years later, in July 2015, OMIG issued a final audit report, which notified petitioner that its letter response had resulted in a reduction of $3,605.54 to the CSP overpayment shown in the revised draft report and that the final total overpayment amount was $109,880.46. Petitioner requested a hearing to challenge the determination (see 18 NYCRR 519.4 [a]) and, after that hearing, an Administrative Law Judge sustained the final audit report.
Petitioner thereafter commenced this CPLR article 78 proceeding, challenging the final audit report on the basis that respondents failed to undertake the audit in a timely manner and that the audit was not conducted in accordance with applicable laws and regulations. Supreme Court granted the petition to the extent of holding that the six-year statute of limitations period in 18 NYCRR 517.3 applied and that, therefore, respondents were time-barred from recouping overpayments based upon claims that were furnished or billed (whichever was later) more than six years prior to the issuance of the draft audit report,[FN1] but otherwise dismissed the petition. Petitioner now appeals, and respondents cross-appeal.[FN2]
Petitioner argues that respondents are foreclosed from recouping the alleged overpayments because the underlying reconciliation process was not completed until 2015, well beyond the six-year statute of limitations period, and respondents failed to avail themselves of a tolling provision (see 18 NYCRR 517.3 [d]) by issuing a notice of intent to audit prior to the expiration of the statute of limitations. 18 NYCRR 517.3 (b) (2) states that, with respect to fee-for-service providers like petitioner, "[a]ll information regarding claims for payment submitted by or on behalf of the provider is subject to audit for a period of six years from the date the care, services or supplies were furnished or billed, whichever is later." The phrase "subject to audit for a period of six years" is arguably "ambiguous as to whether commencement or completion of the audit is required to satisfy the time limitation" (Matter of Grattan v Department of Social Servs. of State of N.Y., 131 AD2d 191, 194 [1987], lv denied 70 NY2d 616 [1988]; accord Matter of County of Rockland v Axelrod, 157 AD2d 960, 961 [1990]). However, 18 NYCRR 517.3 (d) states that "[t]he passage of th[e] six-year period shall not prohibit the department from concluding an audit already begun." Thus, it was entirely rational for respondents to interpret the regulation as requiring the audit to be commenced within the six-year period and, therefore, there is no basis to disturb Supreme Court's determination that the statute of limitations stopped running when the audit was commenced — that is, upon the issuance of the November 18, 2009 draft audit report (see generally Matter of Elcor Health Servs. v Novello, 100 NY2d 273, 280 [2003]). Accordingly, contrary to petitioner's contention, respondents are not time-barred from [*2]seeking recoupment of overpayments based upon claims that were furnished or billed (whichever was later) within the six years prior to the issuance of the draft audit report.[FN3]
Petitioner also argues that respondents failed to comply with certain regulations governing the recovery of COPS and CSP payments. Turning first to the recovery of COPS overpayments, 14 NYCRR 588.13 (d) states, in pertinent part, that "[s]upplemental reimbursement received in excess of [the provider's annual cap] will be recovered in a succeeding year through the medical assistance recovery process authorized pursuant to" Social Services Law § 368-c. Petitioner contends that this regulation requires the recoupment of a COPS overpayment in the year immediately following the overpayment. Under petitioner's construction, respondents would have had to seek recovery of the 2003 COPS overpayment in 2004, the 2004 COPS overpayment in 2005 and the 2005 COPS overpayment in 2006. In contrast, respondents assert that 14 NYCRR 588.13 (d) simply allows the recovery of COPS overpayments in any year, whether one or more, following the accrual of the overpayment.
It is well settled that "the interpretation given to a regulation by the agency which promulgated it and is responsible for its administration is entitled to deference if that interpretation is not irrational or unreasonable" (Matter of Gaines v New York State Div. of Hous. & Community Renewal, 90 NY2d 545, 548-549 [1997]; accord Matter of Council of City of N.Y. v Public Serv. Commn. of State of N.Y., 99 NY2d 64, 74 [2002]). Here, respondents' construction of 14 NYCRR 588.13 (d) is neither irrational nor unreasonable. Significantly, the regulatory provision does not state that the overpayment would be recovered in the succeeding year. Rather, the provision uses the indefinite article "a," which "is not necessarily a singular term" and "is often used to mean 'any' rather than 'one'" (Lewis v Spies, 43 AD2d 714, 715 [1973]; see Matter of Cook v Carmen S. Pariso, Inc., 287 AD2d 208, 213 [2001]). As respondents reasonably construed 14 NYCRR 588.13 (d) to mean that the recovery of COPS overpayments can be sought in one or more years following their accrual (tempered, of course, by the applicable statute of limitations) (see generally Matter of Elcor Health Servs. v Novello, 100 NY2d at 280), we reject petitioner's argument that respondents failed to conduct the audit in accordance with 14 NYCRR 588.13 (d).
As for the recovery of CSP overpayments, 14 NYCRR former 592.8 (d) provides that "[i]n order to recoup [excess CSP] payments . . . [OMH] may adjust the supplemental rates for the period in which the excess visits occurred," with "[s]uch adjustments [being] made no more frequently than quarterly during the year." Petitioner asserts that 14 NYCRR former 592.8 (d) requires that the reconciliation of CSP overpayments occur on an ongoing, real time basis. However, the regulatory provision uses permissive language and does not impose any affirmative duty on OMH or otherwise indicate that the failure to recover overpayments on an ongoing basis would preclude later recovery (see 14 NYCRR former 592.8 [d]). Thus, as Supreme Court concluded, respondents rationally construed the provision as allowing the agency to, at its discretion, recover overpayments through rate adjustments (see generally Matter of Elcor Health Servs. v Novello, 100 NY2d at 280). As such, we cannot conclude, as petitioner urges, that respondents failed to comply with 14 NYCRR former 592.8 (d).
Petitioner further claims that respondents' "extraordinary" delay in issuing the final audit report should be held to have substantially prejudiced it as a matter of law, so as to preclude respondents from recovering any of the alleged overpayments. Although an administrative agency may not be dilatory in its adjudicatory acts, the mere passage of time does not necessarily "serve as a basis for judicial intervention, with peremptory effect, into the administrative process" (Matter of Cortlandt Nursing Home v Axelrod, 66 NY2d 169, 177 [1985], cert denied [*3]476 US 1115 [1986]; see Matter of Louis Harris & Assoc. v deLeon, 84 NY2d 698, 702 [1994]). "In determining whether a period of delay is reasonable . . ., an administrative body in the first instance, and the [J]udiciary sitting in review, must weigh certain factors, including (1) the nature of the private interest allegedly compromised by the delay; (2) the actual prejudice to the private party; (3) the causal connection between the conduct of the parties and the delay; and (4) the underlying public policy advanced by governmental regulation" (Cortlandt Nursing Home v Axelrod, 66 NY2d at 178; see Matter of Corning Glass Works v Ovsanik, 84 NY2d 619, 625 [1994]; Matter of Sylcox v Chassin, 227 AD2d 834, 835 [1996]). The private party bears the burden of establishing that the "administrative delay has significantly and irreparably handicapped [it] in mounting a defense in an adversary administrative proceeding" (Cortlandt Nursing Home v Axelrod, 66 NY2d at 180; see Matter of Sylcox v Chassin, 227 AD2d at 835).
The delay at issue here consisted of nearly six years between respondents' issuance of the draft audit report in November 2009 and its issuance of the final audit report in July 2015 [FN4]. Respondents offered no explanation for their lengthy delay, which by all evidence was attributable solely to them. There is no doubt that petitioner — a not-for-profit organization — had a substantial interest in finalizing its accounts and that respondents' delay in issuing their final calculation of alleged overpayments prevented petitioner from doing so. However, as a COPS and CSP provider, petitioner was aware that any COPS or CSP overpayments received were subject to recovery by the state (see 14 NYCRR 588.14 [f]; former 592.8 [d]; New York State Consolidated Fiscal Reporting and Claiming Manual at 63.1-63.2 [Sept. 2004]). Additionally, at the time that it received the draft audit report in 2009, petitioner was on specific notice to retain all documents and records pertaining to supplemental Medicaid payments received during the audit period, and that any discovered overpayments would be recouped (see 18 NYCRR 517.3 [c]). Thus, as petitioner's receipt of overpayments was provisional, it did not have a vested right to the excess public funds (see Cortlandt Nursing Home v Axelrod, 66 NY2d at 178-179; Matter of DMN Mgt. Servs., LLC v Daines, 79 AD3d 37, 40 [2010]).
Furthermore, as to any actual prejudice incurred, petitioner alleged that it was substantially hindered in mounting a defense due to the unavailability of staff employed during the audit period. However, as demonstrated by petitioner's 2010 and 2011 letter responses to the draft audit report and the revised draft audit report, petitioner was able to mount a defense supported by documentation and graphs identifying the COPS and CSP reimbursement payments that it had received during the period in question. Notably, petitioner had some success in challenging respondents' draft overpayment calculations. Indeed, the final audit report stated that petitioner's 2011 letter response had resulted in a reduction of the overpayment calculation contained in the revised draft audit report. Finally, we note that "[t]here exists a strong, defined public policy [in] this [s]tate to recover public funds improperly received" (Cortlandt Nursing Home v Axelrod, 66 NY2d at 182; see Matter of Sylcox v Chassin, 227 AD2d at 835). Upon weighing the foregoing factors, while we do not condone respondents' lengthy and unexplained delay in issuing the final audit report, we agree with Supreme Court that, under the circumstances of this case and what is presently before us,[FN5] the delay does not warrant an order precluding respondents from recovering, subject to the statute of limitations, the public funds improperly received by petitioner (see Cortlandt Nursing Home v Axelrod, 66 NY2d at 181-183).
Lastly, we patently reject petitioner's contention that OMIG lacked the authority to conduct the underlying audit in conjunction with OMH (see Public Health Law §§ 31 [1]; 32 [14]). To the extent that we have not specifically addressed any of petitioner's arguments, they have been reviewed and found to be without merit.
Egan Jr., J.P., Lynch, Devine and Pritzker, JJ., concur.
ORDERDED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: Because Supreme Court could not determine how the application of the six-year statute of limitations period affected the final overpayment calculation, it remitted the matter for further proceedings on that issue.

Footnote 2: Although respondents express in their brief an intention to withdraw their cross appeal, they have not formally done so (see 22 NYCRR 1250.2). Nevertheless, by not advancing in their brief any argument with respect to their cross appeal, the cross appeal is deemed abandoned (see Carlson v Dorsey, 161 AD3d 1317, 1318 n [2018]).

Footnote 3: The parties do not challenge on appeal Supreme Court's determination that the statute of limitations period for each claim began to accrue on the date that the care, services or supplies were furnished or billed, whichever was later. Additionally, in light of our determination, we need not determine whether the tolling provision in 18 NYCRR 517.3 (c) applies to in-house, postpayment reviews of provider claims, like the one underlying this proceeding.

Footnote 4: As discussed above, the issuance of the draft audit report in November 2009 stopped the statute of limitations from running on any overpayments based upon claims that were furnished or billed after November 2003. Thus, given that the overpayments at issue on appeal are not barred by the statute of limitations, we do not measure the administrative delay from the date on which the claims underlying the overpayments were furnished or billed, as petitioner urges.

Footnote 5: We concur with Supreme Court's conclusion that petitioners may, if the circumstances warrant it, raise the issue of substantial prejudice upon the remittal.