In the Matter of ELMIRA BUSINESS INSTITUTE, INC., Respondent, v NEW YORK STATE DEPARTMENT OF EDUCATION et al., Appellants. (Proceeding No. 1.)

In the Matter of ELMIRA BUSINESS INSTITUTE, INC., Respondent, v NEW YORK STATE HIGHER EDUCATION SERVICES CORPORATION et al., Appellants. (Proceeding No. 2.)

Third Department, April 3, 1986

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Leslie B. Neustadt* and *Peter H. Schiff* of counsel), for appellants.

*O'Connell & Aronowitz, P. C. (Peter L. Danziger* and *Brendan C. O'Shea* of counsel), for respondent.

**OPINION OF THE COURT**

LEVINE, J.

Petitioner is a business school registered to provide instruction pursuant to Education Law § 5002. These proceedings were initiated to review: (1) a determination of respondents Commissioner of Education and State Education Department (SED) which had adopted a final audit report by respondent Comptroller that petitioner had not offered its programs for the academic years between 1975 and 1982 in accordance with the requirements of applicable provisions of the statute and regulations pertaining to Tuition Assistance Program (TAP) grants to its students enrolled in such programs; and (2) the demand of respondent State Higher Education Services Corporation (HESC) for recoupment of TAP moneys paid to petitioner on behalf of such students.

Payments under TAP on behalf of students enrolled, *inter alia,* in two-year programs at registered business schools are subject to the requirement of approval of their programs of study in accordance with promulgated regulations (Education Law § 601 [4]). The regulations regarding TAP-eligible business school programs also provide for the Commissioner's approval of all such programs at each institution (8 NYCRR 145-2.3 [a]), require at least 1,440 hours of instruction for each such program (8 NYCRR 145-2.3 [b] [2] [iii]) and cross-refer-

ence to 8 NYCRR part 126, which governs the general supervisory authority of the Commissioner over registered business schools (8 NYCRR 145-2.3 [b] [2] [iii]). The Comptroller is statutorily mandated to audit institutional compliance with TAP requirements (Education Law § 665 [3] [b]). The president of HESC is required to demand refunds of TAP awards from institutions which fail to conduct approved programs of study in accordance with the Commissioner's regulations (Education Law § 665 [4] [b]). 8 NYCRR part 126 sets up the procedure for registration and reregistration of business schools with SED *(see,* 8 NYCRR 126.10) and for approval of curricula and courses of study, including the particular school's submission of detailed descriptive material on such matters as a program's educational objectives, minimum and maximum instructional hours, and daily and weekly teaching schedules (8 NYCRR 126.4 [c]).

Petitioner first received approval in 1975 for participation in TAP for three of its educational programs, executive secretarial (1,530 hours), business administration-accounting (1,560 hours), and business administration-data processing (1,560 hours). In 1977, the Department of Audit and Control began an auditing process of petitioner's TAP-eligible programs which continued until the final audit report of March 23, 1984. In 1978, Audit and Control issued two preliminary audit reports in which it determined that there were TAP overpayments due, *inter alia,* to payments on account of instructional time for laboratory hours, which in fact were unstructured and unsupervised and for which attendance records were inadequate. In 1982, a tentative audit report further determined that there were TAP overpayments for petitioner's programs because courses were given that were at variance with prior approval thereof given by the Commissioner.

The March 1984 final audit report disallowed $264,263 of TAP payments made from 1975 through 1982. The reason for disallowance was that students enrolled in petitioner's TAP-eligible programs did not complete the requisite minimum of 1,440 hours of instruction in courses approved under 8 NYCRR part 126. This conclusion was based upon the following findings: (1) the approved curricula for the accounting and secretarial programs each provided for 150 hours of electives, whereas virtually none were offered; (2) various courses were actually scheduled for significantly less hours than as originally approved; (3) other courses were scheduled for more hours than as approved; and (4) students were taught unap-

proved courses. Additionally, the final report found that the foregoing deviations were of a serious nature in that, as a result, none of the 46 TAP recipients at petitioner's school during the period examined and who graduated from the programs received the hours of instruction in the "core courses which SED had determined provide the most essential skills or competencies for students to meet the occupational objectives of the program".

In May 1984, petitioner submitted, at SED's invitation, a lengthy position paper attacking the final audit report. After SED reaffirmed the report, petitioner commenced these two CPLR article 78 proceedings to annul the report and to challenge HESC's demand for a refund. Upon review, Special Term granted petitioner the relief sought, annulling both determinations and remitting the matter for reconsideration de novo. The court based its decision on the following grounds: (1) that HESC's attempt to recoup TAP payments from 1975 to 1982 was at least partially barred by reason of inordinate delay in rendering the final audit report and demanding repayment (citing this court's decision in *Matter of Cortlandt Nursing Home v Axelrod,* 99 AD2d 105); (2) that SED had no right to disallow TAP payments to petitioner on the basis of claimed deviations from the courses as approved, since SED's 1975 letter of approval of petitioner's programs gave petitioner the right to make course and program revisions; (3) that other disallowances for payments between 1975 and 1980 were improper because they were based on retroactive application of requirements for attendance recordkeeping; (4) that payment on account of certain of petitioner's courses were improperly disallowed on the basis of retroactive application of standards regarding "core" course requirements not implemented until SED established audit criteria in a 1980 letter to Audit and Control, referred to as the "Blaney letter"; and (5) that disallowance of TAP awards for courses petitioner offered from July 1, 1980 to February 1, 1981 (the period between the expiration of SED's original approval of petitioner's programs and its renewal of approval) was invalid as being in conflict with SED's retroactive renewal of petitioner's registration as a business school, authorized to provide a specific curricula, effective June 1980. This appeal by respondents ensued.

Regarding the first of the grounds adopted by Special Term in annulling the determinations, i.e., undue administrative delay, to the extent that our decision in *Matter of Cortlandt*

*Nursing Home v Axelrod (supra)* may have had applicability, it was reversed by the Court of Appeals, which rejected the notion that the lapse of time in reaching a determination in and of itself may render administrative delay unreasonable and instead held in favor of a test balancing various factors *(Matter of Cortlandt Nursing Home v Axelrod,* 66 NY2d 169, 178). Petitioner has clearly failed to demonstrate that the delay was unreasonable here under the criteria of *Cortlandt.* Notably, there is a total absence of any evidence of prejudice to petitioner in mounting a defense as a result of the lapse of time before the issuance of the final audit report *(see, supra,* at p 180). It was not unreasonable for Audit and Control to delay its examination of the actual operations of petitioner's TAP-eligible programs until after the graduation of the first class of TAP recipients. In preliminary audits between 1978 and 1982, petitioner was put on notice of the substance of all objections to its programs later embodied in the final audit report. Moreover, as in *Cortlandt (supra,* p 182), there exists a strong, statutorily defined policy of the State in favor of recoupment (Education Law § 665 [4] [b]). Therefore, the ground for annulment based upon undue administrative delay is unavailing to petitioner.

We are likewise in disagreement with Special Term's conclusion, based upon its reading of SED's 1975 approval letter, that disallowance could not be based upon petitioner's changes in its curriculum from that which was originally approved. Although the letter referred to revisions in courses which may be made by petitioner or SED, other portions of the letter clearly suggest the need for official approval of any such revisions. The letter states that revisions "shall be completed promptly and in an *acceptable* manner" and that "[t]his approval will terminate if * * * instruction given *does not conform with the course of study as approved"* (emphasis supplied). Moreover, the 1975 letter specifically makes approval contingent upon petitioner's conformity with applicable existing or future regulations. The regulations expressly provide for submission of data for approval of curricula or courses "or revisions thereof" (8 NYCRR 126.4 [c]). To the extent to which the 1975 approval letter may have been at all ambiguous with respect to the requirement of SED approval of any subsequent course revisions, there was no justifiable reliance thereon by petitioner or any other unusual circumstances by virtue of which SED was estopped from enforcing the clear import of the law and regulations *(see, Matter of Daleview*

*Nursing Home v Aexlrod,* 62 NY2d 30, 33; *Matter of Carillo v Axelrod,* 88 AD2d 681).

Our examination of the final audit report also fails to sustain Special Term's conclusion that the disallowance was partly based upon the inadequacy of petitioner's classroom attendance records during the period before the requirement for keeping such records had been officially imposed. The final audit report and the worksheets of the auditors show that the essential methodology used was to examine the cumulative student transcripts of TAP recipients who had graduated from petitioner's programs during the audit period and petitioner's master class schedules for the years in question, and to compare the data contained therein on course content and clock hours of instruction with the same data set forth in petitioner's course programs as approved. Neither the final report nor the auditors' worksheets show that any courses or credit hours were disallowed solely on the basis of petitioner's failure to keep accurate attendance records of each class session.

Nor do we find any impropriety in respondents' use of the criteria set forth in the so-called "Blaney letter". As previously discussed, the governing statute and regulations prohibit a business school from altering curricula and courses as approved by SED without resubmission and approval of any such revisions, and the 1975 letter of approval cannot be fairly construed or applied as authorizing revisions without such further approval. Thus, any deviations by petitioner from the courses as approved were sufficient under the statute and regulations to render the revised courses ineligible for TAP awards and all related TAP payments subject to recoupment. The purpose of the Blaney letter was to mitigate the consequences of strict application of the statute and regulations by providing guidelines for distinguishing between inconsequential and serious deviations from the courses as approved. Since the statute and regulations alone were sufficient to render petitioner's unapproved course revisions ineligible for TAP awards, petitioner cannot complain that disallowance was also determined on the basis of the less stringent criteria of the Blaney letter.

We are also of the view that the Blaney letter was not "a fixed, general principle to be applied by an administrative agency without regard to other facts and circumstances * * * of the statute it administers" *(Matter of Roman Catholic Diocese v New York State Dept. of Health,* 66 NY2d 948, 951)

and, hence, a rule and regulation required to be filed with the Secretary of State under NY Constitution, article IV, § 8. Both as written and as applied by respondents in actual practice, the Blaney letter permits departure from its guidelines upon a showing by the institution that the changes were educationally justified or substantially equivalent in content to the courses as approved. Petitioner declined to provide such justification here.

We have also concluded that Special Term erred in ruling that respondents were bound by SED's renewal of petitioner's registration retroactive to June 1980 and could not, therefore, disallow petitioner's courses which were taught after the expiration of the prior approval of such courses but before the approval of petitioner's new programs became effective on February 1, 1981. The delays in renewal of petitioner's registration and of approval of petitioner's new curriculum both stem from SED's dissatisfaction with the new courses petitioner had submitted for approval. These matters were not resolved until the spring of 1981, after petitioner agreed to certain modifications and provided further documentation. In keeping with past policy and practice, SED then renewed petitioner's registration retroactive to the date of expiration of its prior registration. Special Term relied upon the language of the regulations relating to the eligibility of students for TAP awards which makes the effective date of such eligibility the "date on which the program is registered, unless the registration is specifically made retroactive to an earlier date" (8 NYCRR 145-2.3 [c]). That section of the regulations applies both to business schools and degree-granting institutions. However, only in the case of the latter institutions are their curricula or academic programs *registered* (8 NYCRR 50.1 [h]; part 52). Contrariwise, the applicable regulations for business schools (8 NYCRR part 126) provide no scheme of registration for curricula or programs; the schools are registered (8 NYCRR 126.10) and the curricula are *approved* (8 NYCRR 126.4). The reference to the date of program registration in the regulations relied upon by Special Term was thus, at the very least, ambiguous as to academic programs conducted by business schools. The Commissioner has resolved this ambiguity by construing the date of TAP eligibility to relate to the effective date of *approval* of petitioner's proposed programs, in this case February 1, 1981, rather than the date on which petitioner's registration was retroactively renewed. In light of the distinctly separate treatment under 8 NYCRR part 126

regarding applications for approval of business school curricula and applications for registration by such schools or renewal thereof, it cannot be said that the Commissioner's construction of the regulation at issue was arbitrary or irrational. Therefore, it must be sustained (see, *Matter of Bradford Cent. School Dist. v Ambach,* 56 NY2d 158, 165). The Commissioner's dichotomy between registration and course approval is a long-standing construction of the regulations. In SED's customary form letter of transmittal of registrations, the recipient institution is advised that issuance "does not constitute or infer approval of courses of study".

From our review of the record as a whole, we find nothing arbitrary or capricious in the determinations to disallow, for TAP payment purposes, the courses petitioner taught which substantially deviated from those approved or were entirely unapproved and to also disallow instructional time in excess of that for which courses had been approved, or in the methodology employed to arrive at such determinations. The conclusion that petitioner's three TAP-eligible programs failed to provide the requisite 1,440 hours of instructional time, let alone the more than 1,500 hours for which each program was initially approved, thus has a rational basis. While the resultant recoupment here may have a serious impact, petitioner was on notice that the revisions in its curricula were made at its own risk. The remedy is clearly consistent with and necessary for enforcement of the State's policy to provide strict administrative control over the content of courses for which TAP awards, now totaling annually more than $300 million, are being made. Since the record discloses that petitioner has not raised any material issue of fact requiring a hearing concerning the validity of the determinations, the judgment annulling them should be reversed and the petitions dismissed.

MAHONEY, P. J., KANE, CASEY and WEISS, JJ., concur.

Judgment reversed, on the law, without costs, determinations confirmed and petitions dismissed.