84 N.Y.2d 698 (1994)
646 N.E.2d 438
622 N.Y.S.2d 217
In the Matter of Louis Harris and Associates, Inc., Appellant,
v.
Dennis deLeon, as Commissioner of the New York City Commission on Human Rights, et al., Respondents.
Court of Appeals of the State of New York.
Argued October 19, 1994.
Decided December 13, 1994.
Nixon, Hargrave, Devans & Doyle, Garden City (Thomas G. Dignan, Karen B. Rabinowitz and David P. Ford of counsel), for appellant.
Paul A. Crotty, Corporation Counsel of New York City (Alan G. Krams and Kristin M. Helmers of counsel), for respondents.
Chief Judge KAYE and Judges SIMONS, TITONE, BELLACOSA, SMITH and CIPARICK concur with Judge LEVINE; Judge BELLACOSA concurs in a separate opinion in which Judge TITONE also concurs.
*700 LEVINE, J.
On October 17, 1984, respondent Jay Leventhal filed a complaint with the New York City Commission on Human *701 Rights alleging that petitioner Louis Harris and Associates, Inc. (Harris) and its personnel director John Holden had discriminated against him on the basis of his blindness in violation of the New York City Human Rights Law (Administrative Code of City of NY § 8-101 et seq.). Leventhal's complaint arose out of his interview with Harris in August 1984 for a part-time position to conduct public opinion telephone polls during the 1984 presidential race. Although Leventhal had experience in conducting telephone interviews and in writing, coding and editing opinion surveys, and notwithstanding Leventhal's suggestions at the interview of possible accommodations that Harris could make to enable him to perform the tasks required, approximately four days after the interview Holden informed Leventhal that he could not be offered the position because Harris could not make reasonable accommodations for his disability.
After Harris filed a response to Leventhal's complaint on or about November 14, 1984, Harris heard nothing from the Commission until February 1988 when it received a letter from the Commission's Law Enforcement Bureau (Bureau) stating that the investigative stage of the proceeding was substantially complete. In May 1989, Harris was served with a subpoena requesting production of documents and that Holden be produced for questioning. Harris produced the documents and upon informing the Bureau that it no longer employed Holden, the Bureau subpoenaed Holden and ultimately deposed him on February 2, 1990.
On September 18, 1990, almost six years after Leventhal's complaint was initially filed, the Bureau issued a notice of probable cause determination and referred the complaint to the Commission Hearings Division for an evidentiary hearing, which was conducted in March 1991. In a recommended decision and order dated May 23, 1991, the Administrative Law Judge (ALJ) held that Harris had unlawfully discriminated against Leventhal, finding, inter alia, that Harris had failed to meet its burden of showing that it was unable to reasonably accommodate Leventhal or that Leventhal's proposals for accommodation would impose an undue hardship. The ALJ, however, dismissed the complaint as against Holden on the ground that the record demonstrated that he personally had made a reasonable and good-faith effort to accommodate Leventhal. By decision and order dated December 10, 1991  a full seven years after the filing of the complaint  the *702 Commission adopted the ALJ's recommended decision and order in all but de minimis part.
Harris commenced this special proceeding pursuant to section 8-123 of the Administrative Code seeking to annul the Commission's determination arguing, inter alia, that the Commission's excessive delay in investigating the complaint prejudiced it as a matter of law and fact, and that the ALJ erred in placing the burden on Harris to prove that it was unable to reasonably accommodate Leventhal. Supreme Court dismissed the petition. The Appellate Division affirmed (199 AD2d 78), holding that Harris had failed to establish substantial prejudice due to the delay, and that the burden of proof regarding reasonable accommodation was properly placed on the employer. This Court granted Harris leave to appeal, and we now affirm.
Harris initially argues on this appeal that the Commission's excessive delay in processing Leventhal's complaint  almost six years before a probable cause determination was made and over seven years before a final determination was rendered  should be held to have prejudiced it as a matter of law, mandating dismissal of the complaint without any inquiry into actual prejudice resulting therefrom. We, however, have previously rejected the claim that lapse of time in rendering an administrative determination can, standing alone, constitute prejudice as a matter of law (see, Matter of Cortlandt Nursing Home v Axelrod, 66 N.Y.2d 169, 177-178, cert denied 476 US 1115). We have reaffirmed that proposition in our decision today in Matter of Corning Glass Works v Ovsanik (84 N.Y.2d 619 [decided today]; see also, Matter of Sarkisian Bros. v State Div. of Human Rights, 48 N.Y.2d 816, 818 ["While the length of the delay in processing a complaint is certainly relevant to the determination whether a particular respondent has suffered substantial prejudice from that delay, the mere passage of time normally will not constitute substantial prejudice in the absence of some showing of actual injury to the respondent"]).
Harris directs the Court's attention to Administrative Code former § B1-8.0 (2), applicable at the time of the filing of the instant complaint, which provided that "[a]fter the filing of any complaint, the commission shall make prompt investigation in connection therewith",[1] and argues that the Commission's *703 lack of compliance with this statutory directive is sufficient to justify judicial vacatur of the administrative determination. Its reliance on this provision is unavailing, however. This Court has previously construed identical language pertaining to discrimination complaints under the State Human Rights Law (see, Executive Law § 297 [2] [a] ["After the filing of any complaint, the division shall * * * make prompt investigation in connection therewith"]) as being directory only, noncompliance with which being insufficient to terminate the agency's jurisdiction absent a showing of substantial prejudice (Matter of Sarkisian Bros. v State Div. of Human Rights, supra, at 817-818; Union Free School Dist. No. 6 v New York State Human Rights Appeal Bd., 35 N.Y.2d 371, 380-381; see also, Matter of Cortlandt Nursing Home v Axelrod, supra, at 177 [rejecting similar claim premised upon State Administrative Procedure Act § 301 (1) directing that parties in adjudicatory proceedings be afforded a hearing "within reasonable time"]).
We find nothing in the statutory language of Administrative Code former § B1-8.0 (2), and petitioner has pointed to no legislative history, which would indicate that the directive was intended to be anything other than "for the benefit of complainants and others benefited and [thus] cannot be held to shelter those charged with violation of the statute" without a showing of substantial prejudice (Union Free School Dist. No. 6 v New York State Human Rights Appeal Bd., supra, at 380-381; see, Matter of Syquia v Board of Educ., 80 N.Y.2d 531, 535-536; see also, McKinney's Cons Laws of NY, Book 1, Statutes § 172).
In Matter of Cortlandt Nursing Home v Axelrod (supra), we delineated the factors, pertinent here, to be weighed in assessing the reasonableness of administrative delay:
"(1) the nature of the private interest allegedly compromised by the delay; (2) the actual prejudice to the private party; (3) the causal connection between the conduct of the parties and the delay; *704 and (4) the underlying public policy advanced by governmental regulation" (id., at 178).
The Cortlandt factors do not weigh in Harris' favor. The statutorily defined public policy advanced by New York City's antidiscrimination laws is one of utmost importance, not only to the affected parties but also to all persons and institutions, and the public interest in redressing discriminatory acts is one of great significance (see, Administrative Code § 8-101 ["there is no greater danger to the health, morals, safety and welfare of the city and its inhabitants"]). While the Commission acknowledges that Harris was not responsible in any manner for the administrative delay (see, Matter of Cortlandt Nursing Home v Axelrod, supra, at 182), there is also no evidence here of "repetitive, purposeless and oppressive" action against Harris on the part of the Commission (id., at 181), and "[a] court should be extremely reluctant to hold agency inaction unreasonable where the delay is attributable to a lack of resources" (id., at 181). The only private interest identified by Harris as having been impacted by the delay here is its ability to mount an adequate defense to the discrimination charges. That interest has only been compromised, however, to the extent that Harris has suffered substantial, actual prejudice generated by the protracted delay, the remaining, "critical" (id., at 180) Cortlandt factor to be considered.
We conclude that substantial prejudice to Harris has not been established on this record. Harris' claim of actual prejudice focuses on its witness Holden's inability at the hearing to recall certain details of his efforts to investigate means of accommodating Leventhal, including the names of experts with whom he had consulted, as well as the substance of those conversations and others which transpired with Harris personnel. Significantly, though, the Commission's ultimate finding of discrimination on the part of Harris was not based at all on the inadequacy of Holden's efforts at pursuing means of accommodation. Rather, it was premised on the conduct of Harris' former vice-president for operations Stacpole, Harris' employee with the authority to order that accommodations be made for Leventhal, whom the Commission found made a hasty and unsubstantiated decision not to hire Leventhal without considering or pursuing any accommodation options. The record reflects that Holden, after his consultations, met with Stacpole and outlined and recommended one or more of the options for accommodation which Leventhal had suggested in his interview. Thus, it is entirely speculative for Harris to *705 suggest that the experts with whom Holden consulted before recommending such accommodation would have supported Harris' refusal to make any accommodations for Leventhal. Further, Stacpole was not called as a witness by Harris and there was no showing of her unavailability to testify at the hearing. Thus, similarly, there is no support in the record for Harris to claim that she relied on the same experts in refusing to make any accommodations for Leventhal's disability.
Moreover, Harris' claim of prejudice due to Holden's lack of memory is undermined by the fact that it was put on notice of the substance of Leventhal's allegations when it received the complaint from the Commission shortly after its decision not to hire Leventhal, and could have taken diligent steps to preserve evidence and testimony (see, Occidental Life Ins. Co. v Equal Empl. Opportunity Commn., 432 US 355, 372; Matter of Elmira Bus. Inst. v New York State Dept. of Educ., 116 AD2d 133, 137, affd for reasons stated below 70 N.Y.2d 758). We thus conclude that insufficient proof of substantial prejudice due to the delay exists on this record to justify vacatur of the administrative determination.
In so holding, we must express our serious concern over the inordinate delay which transpired in the administrative process in this matter. Whether caused by inadequate resources or otherwise, the lack of repose in human affairs and disputes affecting the public interest as in this case occasioned by such lengthy delays in the administrative process is disquieting, and should be a matter of grave concern to all branches of government as it may well have become a common phenomenon. Justice long delayed cannot only impair the actual fairness, but also the public perception of the evenhandedness of administrative adjudications. When faced with such excessive delays in the administrative process as occurred in this case, courts should closely scrutinize the record for substantial prejudice to a party due to the delay. Having found no such prejudice here, however, we must decline to invalidate the agency's determination.
Harris' final contention on this appeal is that the Commission erred when it placed the burden on Harris to show that it was unable to reasonably accommodate Leventhal or that Leventhal's proposals for accommodation would impose an undue hardship. At the time pertinent to this complaint, the Administrative Code provided that it was unlawful to refuse to hire an "otherwise qualified person" because of the person's *706 disability (Administrative Code former §§ B1-7.1, B1-7.0 [1] [a]), an "otherwise qualified person" being defined as "a handicapped person, who, with reasonable accommodation can satisfy the essential requisites of the job or benefit in question" (Administrative Code former § B1-2.0 [16] [e]). The statute was silent as to the placement of the burden on the issue of reasonable accommodation.[2]
Under such circumstances, the practical construction of the statute by the agency charged with implementing it, if not unreasonable, is entitled to deference by the courts (see, Matter of Lezette v Board of Educ., 35 N.Y.2d 272, 281). The reasonableness of the Commission's interpretation here in allocating the burden to the employer to prove undue hardship is supported by its accord with the prevailing allocation of the ultimate burden on this issue under analogous Federal antidiscrimination laws (see, e.g., Wood v Omaha School Dist., 985 F.2d 437, 439 [8th Cir]; Gilbert v Frank, 949 F.2d 637, 642 [2d Cir]; Prewitt v United States Postal Serv., 662 F.2d 292, 310 [5th Cir]). Moreover, it is clearly rational to place the ultimate burden of proving undue hardship on the employer who is in the better position to assess the feasibility of possible accommodations and to know how they will impact its business operations (see, Gilbert v Frank, 949 F2d, at 642, supra).
Accordingly, the order of the Appellate Division should be affirmed, with costs.
BELLACOSA, J. (concurring):
While I join in Judge Levine's opinion for the Court, I write separately to emphasize my concerns with the rule that judicially adds a "substantial prejudice" component to the resolution of delay aspects in this type case, apparently no matter the length of the official, administrative delay (see, e.g., Matter of Syquia v Board of Educ., 80 N.Y.2d 531, 535; Matter of Cortlandt Nursing Home v Axelrod, 66 N.Y.2d 169, 180, cert denied 476 US 1115; Matter of Sarkisian Bros. v State Div. of Human Rights, 48 N.Y.2d 816, 817). The state of the record and the governing law is such that there is no basis for the courts to reverse or substitute the pertinent administrative agency findings with respect to the determination of unlawful discrimination or the delay.
*707 This New York City case and its governmental twin at the State Division of Human Rights level (Matter of Corning Glass Works v Ovsanik, 84 N.Y.2d 619 [decided today] [involving the application of the time schedules in Executive Law § 297]) merit prompt legislative attention. Prompt, efficient and fair adjudication of claims appears to have been lost in the precedents that characterize the timeliness feature as some merely "directory" technical rule. For all practical purposes, the word "prompt" in Administrative Code of the City of New York former § B1-8.0 (2) has been drained of all functional meaning and the purport of its inclusion in the statute has been set aside as essentially irrelevant.
This is not prudent methodology in statutory interpretation since the Court's responsibility includes providing meaning to all words in statutes (see, McKinney's Cons Laws of NY, Book 1, Statutes § 231). While I agree that the instant cases concern matters of "utmost importance", other overarching jurisprudential values are at stake as well. The very enactment of the word "prompt" proclaims the legislative judgment that only claims that can be fairly and legitimately tested and resolved ought to fall within the administrative jurisdictional ambit. The fact that no Statute of Limitations as such has been legislated in these matters, should not mean that reasonable and fair repose to controversies should be foregone. That value and goal serves the best interests of parties and the common good of society for the proper administration of this executive agency adjudication segment of the justice system.
Apparently, by all indications, the magnitude of this problem and the number of such very troublesome cases are not rare. Our previous cases exposed the tip of the iceberg (see, Matter of Cortlandt Nursing Home v Axelrod, supra; Matter of Geary v Commissioner of Motor Vehicles, 59 N.Y.2d 950, 952; Board of Educ. v State Div. of Human Rights, 42 N.Y.2d 862). The instant cases show how much more deeply the problem lies. Indeed, the deplorable situation was forthrightly acknowledged on oral argument in each case, respectively by the New York City Assistant Corporation Counsel and the New York State Assistant Attorney-General (see also, Kilborn, Backlog of Cases Overwhelms Federal Jobs-Bias Commission, New York Times, Nov. 26, 1994, at 1). Both government lawyers acknowledged that the resources for their City and State agencies are "shrinking", their jurisdiction and case loads are "growing, growing, growing" and the expanding delay problems *708 "will not get better" and "will happen again". These frank utterances, stated in lawyerly euphemisms, demonstrate that the problem is systemic and growing worse.
Claimants and employers with legitimate claims or defenses and the common weal are ill served when the courts, even with limited administrative agency purview power, countenance this justice delayed-justice denied syndrome, especially in this special universe of cases and controversies. Considerations of fairness, prudence and social tranquility require that a time should come after which any entity charged with wrongdoing should not be subject to inquiry and punishment. One reason is that the adjudication system in such circumstances cannot reasonably assure that greater miscarriages of justice will not be generated. Actually and perceptually, the quality of justice and fragile respect for its administration suffers seriously when lengthy delays are tolerated. Without legislative reform, this fundamental goal of due process and fairness, as applied in these statutory procedural delay cases, is lost not only as to those accused of discriminatory conduct, but also as to claimants who suffer discrimination and the commitment to redress harms against them. In the present state of the law, everyone loses.
Order affirmed, with costs.
NOTES
[1] Administrative Code § 8-109 (g), applicable to complaints filed on or after September 1, 1991, now provides: "[T]he commission shall commence proceedings with respect to the complaint, complete the investigation of the allegations of the complaint and make a final disposition of the complaint promptly and within the time periods to be prescribed by rule of the commission. If the commission is unable to comply with the time periods specified for completing its investigation and for final disposition of the complaint, it shall notify the complainant, respondent, and any necessary party in writing of the reasons for not doing so."
[2] In 1991 the Administrative Code was amended to explicitly place the burden of proving inability to make reasonable accommodation on the employer, providing: "The term `reasonable accommodation' means such accommodation that can be made that shall not cause undue hardship in the conduct of the covered entity's business. The covered entity shall have the burden of proving undue hardship" (Administrative Code § 8-102 [18]).