[620 NYS2d 558]

In the Matter of TOURO COLLEGE, Appellant, v DONALD J. NOLAN, as Deputy Commissioner for Higher and Professional Education, et al., Respondents.

Third Department, December 22, 1994

## APPEARANCES OF COUNSEL

*Bower & Gardner,* New York City *(Irwin J. Landes* and *Harry Steinberg* of counsel), for appellant.

*G. Oliver Koppell, Attorney-General,* Albany *(Leslie B. Neustadt* and *Peter G. Crary* of counsel), for respondents.

## OPINION OF THE COURT

CASEY, J.

This appeal arises out of respondents' administration of the Supplemental Tuition Assistance Program (hereinafter STAP), which provides one year of tuition assistance to students whose educational deficits and need for remediation are so great that they would not be considered admissible to a college-level program.* Petitioner, which had established several degree programs to serve the Yiddish-speaking Orthodox and Hasidic Jewish communities, accepted a substantial number of Yiddish-speaking students who had previously attended Rockland Community College (hereinafter RCC). The students were certified by petitioner as eligible for STAP grants. Respondents notified petitioner that the STAP grants to the students who had previously attended RCC were being disallowed and that a refund was due from petitioner. At petitioner's request, respondents agreed to review the STAP eligibility of the students who had transferred from RCC and invited petitioner to submit relevant information, which it did. Respondents determined that there was no basis for petitioner's conclusion that students with a prior successful college experience at RCC were educationally disadvantaged and eligible for STAP grants. Petitioner commenced this CPLR article 78 proceeding to review respondents' determination and now appeals from Supreme Court's judgment which dismissed the petition.

---

* The responsibility for enforcing administrative control over State-supported higher educational student and institutional aid programs is shared by a number of State officers and agencies and the State Higher Education Services Corporation *(see, Matter of Elmira Bus. Inst. v New York State Dept. of Educ.,* 116 AD2d 133, *affd* 70 NY2d 758). For the purposes of this appeal, we will refer to respondents collectively, regardless of whether the matter under discussion actually falls within the responsibility of one or more of the aforementioned entities.

To be eligible for a STAP grant, a student must be "educationally disadvantaged" (Education Law § 667-a). The relevant regulation applicable to nonpublic institutions such as petitioner provides that "[t]he basic test of educational disadvantage is nonadmissibility, by the college's normal admission standards, to the college at the matriculated status in a degree program" (8 NYCRR 27-1.1 [a]). According to petitioner, it made the determination in the first instance based upon its "normal admission standards" and found the former RCC students not admissible to a degree program because their writing samples indicated they were illiterate and in need of remedial education. Petitioner argues that respondents effectively substituted their judgment for that of petitioner regarding the students' admissibility to a degree program, which violates both the plain wording of the regulation and the strong policy considerations applicable to an educational institution's judgment of a student's academic performance *(see, Matter of Susan M. v New York Law School,* 76 NY2d 241, 245). We disagree.

"[T]o preserve the integrity of the credentials conferred by educational institutions", the courts regularly defer to an educational institution's "pedagogical evaluation of academic performance" *(supra,* at 246). Petitioner's determination of whether to admit a student to one of its degree programs may be entitled to such deference, but there is no basis for according the same deference to petitioner's separate and distinct determination of that student's eligibility for a STAP grant, which has no bearing on the integrity of the credentials conferred by petitioner. The latter determination does, however, have a direct impact on the integrity of STAP, over which the State has a policy of strict administrative control *(see, Matter of Elmira Bus. Inst. v New York State Dept. of Educ.,* 116 AD2d 133, 140, *affd* 70 NY2d 758, *supra).* Nor should the regulation relied upon by petitioner be read as according deference to petitioner's STAP eligibility determination, for to do so would mean that by promulgating the regulation, respondents effectively abdicated their responsibility to administer STAP and to preserve its integrity. We agree with respondents that they have the authority and the obligation to review a nonpublic educational institution's certification of a student's eligibility for a STAP grant, even though the certification depends upon the student's admissibility to a degree program. Respondents' determination of a student's eligibility for a STAP grant has no impact on the institution's

right to decide whether to admit that student to one of its degree programs.

Turning to the evidentiary basis for respondents' determination, and applying the appropriate standard of review *(see,* CPLR 7803 [3]), we agree with Supreme Court that respondents' determination has a rational basis in the record, which precludes any further judicial review or intervention *(see, e.g., Matter of Crown Bus. Inst. v New York State Dept. of Audit & Control,* 168 AD2d 843). The parties focus considerable attention on the former RCC students' receipt of Tuition Assistance Program (hereinafter TAP) grants while they attended RCC. According to respondents, the relevant statutory and regulatory scheme does not contemplate that students who receive TAP grants for several semesters and are certified as capable of college-level work, which is a TAP eligibility requirement *(see,* Education Law § 667 [1]), would subsequently be certified by a different college as educationally disadvantaged in order to receive STAP grants. In an unrelated administrative proceeding, respondents determined that RCC improperly certified the particular students at issue in this proceeding as eligible for TAP grants, which renders respondents' argument about the effect of the students' receipt of TAP grants irrelevant.

Petitioner claims that respondents' determination regarding the eligibility of the students for TAP grants while attending RCC is inconsistent with their determination of the students' eligibility for STAP grants while enrolled in petitioner's remedial program. We find no merit in this claim. The TAP eligibility determination had nothing to do with the academic performance of the students or their ability to pursue a degree program; nor was the determination based upon any deficiency in the courses taken by the students at RCC. Rather, the TAP eligibility determination was based upon respondents' finding that although the students were enrolled in an approved liberal arts program, the students were not actually pursuing the requirements of that program because the Judaic Studies courses they were taking were too specialized to meet the liberal arts core requirement. Respondents' TAP determination, therefore, is not inconsistent with the determination under review in this case.

Petitioner based its certification of the former RCC students' eligibility for STAP grants on the writing samples submitted by the former RCC students which, according to petitioner, revealed that the students were so deficient in English as to

render them illiterate and, therefore, ineligible for any of petitioner's degree programs. Petitioner claims that respondents ignored the undisputed evidence of the students' illiteracy and concluded that the students were not educationally disadvantaged merely because they had previously attended RCC. We agree with respondents that their determination has a much broader basis than petitioner claims. The determination expressly recognized that petitioner had demonstrated the students' deficient English writing skills, but respondents found other relevant factors and concluded that petitioner had erred in basing its certification exclusively on the students' English writing deficiencies. Respondents pointed out that the students had generally scored well on a multiple choice test of English language proficiency, which petitioner had given as part of the admission process. Petitioner does not dispute the students' performance on the test, but contends instead that writing samples are a more accurate measure of the students' proficiency than a multiple choice test. The argument misses the thrust of respondents' determination, which is that no single factor is determinative of the students' eligibility for STAP awards.

Respondents also relied upon the students' "successful college experience" at RCC. Petitioner claims that the courses taken by the students at RCC were a "sham", as recognized by respondents' determination not to approve a program consisting of those courses. The determination referred to by petitioner was not based upon any deficiency in the courses; nor did it find that the courses were not college level. Rather, the determination was based upon RCC's attempt to offer Judaic Studies courses as part of its approved liberal arts program. Respondents determined that a liberal arts program with a Judaic Studies emphasis would not provide an education of the breadth which characterizes study in the liberal arts and sciences. Although the Judaic Studies courses taken by the students at RCC did not meet the core requirements for RCC's liberal arts program, it does not necessarily follow that the students' successful completion of those courses cannot be considered a "successful college experience". Petitioner itself gave credit to a few of the students for the RCC courses.

Respondents also relied upon the fact that many of the students who were certified by petitioner as eligible for STAP grants successfully completed a credit-bearing course taught in English while they were receiving the STAP grants. As a final matter, respondents noted that the students' English

writing deficiencies could have been accommodated in remedial courses within the context of TAP *(see,* 8 NYCRR 145-2.1). It is clear that in contrast to petitioner's focus on the former RCC students' writing samples, respondents considered all of the relevant circumstances to determine that petitioner erred in certifying the students as eligible for STAP grants. We see no basis to disturb respondents' determination.

CARDONA, P. J., MIKOLL, MERCURE and YESAWICH JR., JJ., concur.

Ordered that the judgment is affirmed, without costs.