Peters, P.J.
Appeal from a judgment of the Supreme Court (Ceresia Jr., J), entered June 15, 2011 in Albany County, which, in a proceeding pursuant to CPLR article 78, among other things, denied respondents’ motion to compel petitioner to comply with a subpoena ad testificandum.
In 2009, respondent Commission on Public Integrity notified petitioner, the then President and Chief Executive Officer of the State University of New York Research Foundation, that it had received information indicating that he may have violated Public Officers Law § 74 (3) (d), (f) and (h). Specifically, the Commission explained that it had received information that petitioner had secured employment for Susan Bruno, the daughter of former State Senate Majority Leader Joseph Bruno, “for which she was not qualified and for which she did little or no work,” and had given her privileges that he did not confer on the other Research Foundation employees.[1]
During the course of its investigation, the Commission made several attempts to secure petitioner’s sworn testimony on a voluntary basis. When those efforts proved unsuccessful, the Commission issued a subpoena requiring him to appear before it. Thereafter, petitioner and respondents entered into an agreement whereby, in exchange for the Commission’s withdrawal of the subpoena, petitioner would appear voluntarily for a sworn interview on a date certain. It was further agreed that petitioner would subsequently be afforded an opportunity to provide an unsworn statement or explanation concerning the matters under investigation. Notwithstanding this agreement, petitioner did not appear on the date scheduled.
Just over a week later, the Commission issued a notice of reasonable cause (hereinafter NORC) (see Executive Law § 94 former [12] [b]) alleging that petitioner knowingly and intentionally violated Public Officers Law § 74 (3) (d), (f) and (h). Accompanying the NORC was a new subpoena requiring *1209 petitioner to provide testimony. On the return date, petitioner’s counsel informed the Commission that the subpoena was ineffective and, thus, petitioner would not be appearing to give testimony.
Petitioner subsequently commenced the instant proceeding against respondents seeking an order directing them to commence an administrative hearing on the NORC on a fixed date and to appoint an independent hearing officer to preside over the hearing. Respondents opposed the petition and moved for an order compelling petitioner to comply with the subpoena. Supreme Court dismissed the petition, finding that petitioner failed to demonstrate a clear legal right to the relief sought. The court also denied respondents’ motion, concluding that the Commission’s power to issue a subpoena is limited to the investigatory period preceding the issuance of the NORC. Respondents now appeal.[2],[3]
Executive Law § 94 former (16) (d) empowers the Commission to “[cjonduct any investigation necessary to carry out the provisions of this section.”[4] “Pursuant to this power and duty, the [Commission may administer oaths or affirmations, subpoena witnesses, compel their attendance and require the production of any books or records which it may deem relevant or material” (Executive Law § 94 former [16] [d]). Despite this broad grant of authority, Supreme Court found that the Commission’s investigation—including its power to issue a subpoena for investigatory purposes—terminates once it issues a NORC. In reaching this conclusion, the court relied on the language of *1210 19 NYCRR former 941.3 (a), which provides that, “[i]f the [Commission, subsequent to an investigation of a possible violation ... of the Public Officers Law[,] . . . determines that there is reasonable cause to believe that a violation has occurred, it shall send a [NORC]” (emphasis added). In Supreme Court’s view, the language of the regulation strongly suggests that the drafters of the rule—the Commission—contemplated that a NORC would be issued only at the conclusion of the investigation. But the Commission maintains that the requirement that a NORC be issued “subsequent to an investigation” means only that a NORC must be issued subsequent to some investigation into the alleged violation—i.e., an investigation that results in a determination that there is reasonable cause to believe that a violation has occurred—not that one may only be issued at the conclusion or termination of the investigation. Thus, according to the Commission, it is not abruptly stripped of its broad investigatory powers simply because the threshold evidence it had obtained caused the issuance of the statutorily required NORC.
The interpretation given to a regulation by the agency which promulgated it and is responsible for its administration is entitled to deference and should be upheld if not irrational or unreasonable (see Matter of Transitional Servs. of N.Y. for Long Is., Inc. v New York State Off. of Mental Health, 13 NY3d 801, 802 [2009]; Samiento v World Yacht Inc., 10 NY3d 70, 79 [2008]; Matter of Gracie Point Community Council v New York State Dept. of Envtl. Conservation, 92 AD3d 123, 128 [2011], lv denied 19 NY3d 807 [2012]). Here, the Commission’s interpretation does not conflict with the plain language of the regulation or Executive Law § 94 and can neither be characterized as irrational nor unreasonable. Executive Law § 94 former (16) (d) contains no time limitation on the Commission’s broad power to “[c]onduct any investigation” to carry out the provisions of the statute. Nor does the regulation at issue—which addresses only when a NORC may be issued and to whom it must be sent— reference the Commission’s statutory subpoena power or contain any language purporting to impose a limitation on that power. We are hard pressed to read the regulation in a manner that would restrict the power expressly vested upon the Commission by the Legislature. “It would certainly be unusual, if not impossible, for an administrative agency so to deprive itself of power that the Legislature conferred upon it” (Matter of Dickinson v Daines, 15 NY3d 571, 575 [2010]).
*1211 Moreover, the statute and implementing regulations, when read as a whole, contemplate ongoing investigatory power on the part of the Commission. For example, Executive Law § 94 former (12) (a) provides that “if the [Commission determines at any stage of the proceeding[ ] that there is no violation or that any potential conflict of interest violation has been rectified, it shall so advise the individual [subject to the investigation] and the complainant, if any” (emphasis added). In addition, the regulation immediately following the one at issue here requires the Commission to provide written notice to the parties when, following the issuance of a NORC, it “elects to go forward with a hearing” on the violations charged therein (19 NYCRR 941.4). These provisions intimate the continuing nature of the Commission’s investigatory function and contemplate the possibility that additional information could come to light after the issuance of a NORC that would persuade the Commission to change its course. The Commission’s interpretation is further supported by the fact that a NORC must be issued upon the threshold determination that there is “reasonable cause” to believe a violation has occurred (Executive Law § 94 former [12] [b]), while a final determination of guilt must be based on “substantial evidence” establishing the violation (19 NYCRR 941.6). Given these differing burdens of proof, it may well be incumbent upon the Commission to gather additional evidence relevant to its inquiry into the charged violations subsequent to the issuance of a NORC.
Notably, the Commission’s interpretation of its regulation is consistent with the overall purpose and spirit of Executive Law § 94, which is to “strengthen the public’s trust and confidence in government through fair and just adjudicatory procedures that afford all parties due process protection and fair and just resolution of all matters” (19 NYCRR 941.1; see generally Matter of McCulloch v New York State Ethics Commn., 285 AD2d 236, 240-241 [2001]). Following the issuance of a NORC, the Commission could become aware of other potential witnesses or additional information relevant to the possible violations. Thus, construing the regulation to permit the Commission to continue its investigation, despite having issued a NORC, would best serve the underlying purposes of the statute. Conversely, to interpret the regulation as precluding investigation into new evidence, based solely on the fact that a NORC had been issued, would clearly impede the truth seeking function of the Commission. For all of these reasons, we conclude that the Commis *1212 sion’s investigatory powers, including its power to issue a subpoena, do not terminate upon the issuance of a NORC.[5]
There can be little dispute that much time has transpired since the Commission commenced this investigation, and we fully agree with the concurring opinion (Lahtinen, J.) that a hearing on the merits of the charges should commence without further undue delay. Yet, we cannot agree, as that concurrence suggests, that principles of equity and fundamental fairness warrant the conclusion that the time for a prehearing interview has now passed. Petitioner has continually resisted efforts by the Commission to secure his testimony. The Commission sought on multiple occasions to obtain petitioner’s testimony, first by requesting that testimony on a voluntary basis, and then by issuing a subpoena to compel it. As noted, the subpoena was only withdrawn after petitioner agreed to voluntarily appear for an interview, an agreement that petitioner thereafter reneged on. In our view, the Commission should not be hamstrung by petitioner’s tactics in this regard. To do so would abridge the Commission’s statutory power to conduct an investigation and subpoena witnesses and ultimately impede its truth seeking function (see Executive Law § 94 former [16] [d]).
Garry, J., concurs.

. A second letter was issued by the Commission in January 2010, which superceded and replaced the first letter. The January 2010 letter charged petitioner with the same statutory violations, but clarified that the alleged misconduct related to acts occurring after April 25, 2007, the effective date of legislation that deemed the Research Foundation to be a “state agency” subject to the provisions of the State Code of Ethics set forth in Public Officers Law § 74.

. Supreme Court subsequently issued an amended judgment from which respondents have not appealed. Inasmuch as the amended judgment does not differ materially from the original judgment, we will treat the appeal as taken from both judgments in the interest of judicial economy (see CPLR 5520 [c]; Matter of Anesi v Brennan, 75 AD3d 791, 792 [2010]; Matter of Scala v Tefft, 42 AD3d 689, 691 n [2007]).

. Pursuant to the Public Integrity Reform Act of 2011, the Commission was replaced with the newly formed Joint Commission on Public Ethics (L 2011, ch 399 [codified at Executive Law § 94]). The Act provides, among other things, that the Joint Commission on Public Ethics shall assume the functions, duties, powers, obligations and unfinished business of the Commission and that the regulations promulgated by the Commission continue to govern matters over which the Commission had jurisdiction when the regulations were issued (see L 2011, ch 399, §§ 6, 15, 16). As relevant here, the Act further provides that, “upon application to the court, the [J]oint [Commission on [P]ublic [Ejthics shall be substituted as a party [for the Commission]” (L 2011, ch 399, § 19). Deeming respondents’ request in their brief to be such an “application,” we grant it.

. Although Executive Law § 94 was amended pursuant to the Public Employee Ethics Reform Act of 2007 (L 2007, ch 14), the substance of Executive Law § 94 former (16) (d) is now contained in Executive Law § 94 (17) (c).

. As the concurring opinion (Egan, J.) points out, petitioner in his brief has expressly limited the issue on this appeal to whether the Commission has the power to issue a post-NORC subpoena compelling his attendance at an investigative interview. Thus, any argument that the subpoena was ineffective because it purports to compel attendance at a non-existent “hearing,” rather than an investigative prehearing interview, has been abandoned (see Matter of Cascino v Judges of the Albany County Ct., 95 AD3d 1458, 1460 [2012]; Phoenix Signal & Elec. Corp. v New York State Thruway Auth., 90 AD3d 1394, 1395 n 1 [2011]; Matter of Trudeau v Cantwell, 31 AD3d 844, 845 n 1 [2006]).