*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  March 31, 2016                    520412
_____

In the Matter of NEW YORK
    STATE DEPARTMENT OF
    CORRECTIONS AND COMMUNITY
    SUPERVISION,
                        Petitioner,

            v                                  MEMORANDUM AND JUDGMENT

NEW YORK STATE DIVISION OF
    HUMAN RIGHTS,
                        Respondent,
                        et al.,
                        Respondents.
_____

Calendar Date:  February 10, 2016

Before:  Peters, P.J., Garry, Rose, Devine and Clark, JJ.

_____

        Kevin P. Bruen, New York State Department of Corrections
and Community Supervision, Albany (Benjamin H. Rondeau of
counsel), for petitioner.

        Caroline Downey, New York State Division of Human Rights,
New York City (Toni Ann Hollifield of counsel), for New York
State Division of Human Rights, respondent.

_____

Rose, J.

        Proceeding pursuant to Executive Law § 298 (transferred to
this Court by order of the Supreme Court, entered in Albany
County) to review a determination of the Commissioner of Human
Rights which, among other things, found petitioner guilty of an
unlawful discriminatory practice based on disability.

Kenneth W. Howarth suffered from neurocardiogenic syncope, a condition that caused him to occasionally faint while performing his duties as a correction officer employed by petitioner. Howarth fainted as he left work in his car in July 1994, causing an accident, and petitioner placed him on involuntary leave pending a medical examination pursuant to Civil Service Law § 72. Because his request for a light-duty assignment was denied, he was required to exhaust his accumulated leave time, after which he earned no salary until the medical unit of respondent Department of Civil Service found him fit and he was returned to duty in October 1994. Two months later, Howarth again fainted at work, and petitioner again placed him on involuntary leave. Petitioner again denied Howarth's request for a light-duty assignment and terminated his employment in January 1995. Howarth contested his termination under the Civil Service Law and, in August 1995, he also filed the first of his two complaints with respondent State Division of Human Rights (hereinafter SDHR) alleging that petitioner had discriminated against him on the basis of a disability. In September 1995, a hearing officer restored him to his job with back pay and benefits.

As a result of being out of work, as well as other factors, Howarth filed for bankruptcy in 1996. In April 1997, he again fainted at work and was again placed on involuntary leave. Although he was found fit to return to work by the Department of Civil Service in June 1997, he was involved in yet another motor vehicle accident in July 1997 and again placed on involuntary leave. He then filed the second of these complaints with SDHR alleging that petitioner had discriminated against him again and also retaliated against him for his first complaint. Once again, he was found fit by the Department of Civil Service, he returned to work in August 1997 with restored pay and benefits, and ultimately he was promoted to sergeant.

SDHR did not commence hearings on the 1995 and 1997 complaints until 2004. Although the testimony was neither long nor complicated, the hearings were not concluded until 2006. Seven years then passed without a decision. Finally, in 2013, an Administrative Law Judge (hereinafter ALJ) determined, among other things, that petitioner had granted light-duty assignments

to employees with disabilities incurred on the job, whereas employees with disabilities that were not work related — such as Howarth — were denied light-duty assignments. The ALJ found that petitioner had discriminated against Howarth by placing him on involuntary leave under the Civil Service Law, resulting in the use of leave accruals and leave without pay. The ALJ's recommended award directed petitioner to pay to the trustee in bankruptcy any lost wages and benefits that had not been restored to Howarth for times that he was out of work between July 1994 and August 1997, as well as compensatory damages of $20,000 for mental anguish, but the extent of the unrestored lost wages and benefits was not determined. Instead, the Comptroller was ordered to "perform an accounting" to supply this information and determine these amounts. Petitioner was also ordered to revise its policy regarding light-duty assignment and provide discrimination prevention training to all of its employees. The Commissioner of Human Rights adopted the ALJ's recommendations in December 2013 with some modifications not relevant here, and this proceeding to review the determination ensued.

Initially, we are unpersuaded by petitioner's argument that because a public employer has discretion when using Civil Service Law procedures regarding an employee, SDHR did not have jurisdiction over this matter. Where it is alleged that such procedures are used in a discriminatory manner under the Human Rights Law, SDHR has jurisdiction (see Matter of New York State Dept. of Correctional Servs. v New York State Div. of Human Rights, 57 AD3d 1057, 1058-1059 [2008]; see also Matter of State Div. of Human Rights [Granelle], 70 NY2d 100, 106-107 [1987]). Further, the issue of whether there was substantial evidence to support the findings of discrimination and retaliation is not raised by petitioner in its brief before this Court.

We must agree, however, with petitioner's primary contention that the complaints should be dismissed because of SDHR's delay in processing them. The controlling statute sets forth time limits, measured in mere days and months, requiring SDHR to promptly consider and determine discrimination complaints (see Executive Law § 297). We are well aware that the time limits in Executive Law § 297 are "directory only" (Matter of Corning Glass Works v Ovsanik, 84 NY2d 619, 623 [1994] [eight-

year delay]), and that they "exist for the benefit of complainants and should not be used to . . . shelter those charged with violating the statute unless there is a showing of substantial actual prejudice" (id. at 624).

Nevertheless, the time that elapsed here from the initial complaint until the Commissioner issued her final order was more than 18 years.  In an agency long known for its troublesome and excessive delays (see e.g. Matter of Diaz Chem. Corp. v New York State Div. of Human Rights, 91 NY2d 932 [1998] [14-year delay]; Matter of Louis Harris & Assoc. v deLeon, 84 NY2d 698 [1994] [seven-year delay]), this delay of nearly a generation has plumbed a new depth of administrative inertia that has, in our view, reached the point of being "jurisprudentially intolerable" (Matter of Diaz Chem. Corp. v New York State Div. of Human Rights, 91 NY2d at 935 [Bellacosa, J., concurring]).  Indeed, in a case decided by SDHR six years quicker than this one, we "decr[ied] SDHR's egregious delays," stating that "they were an abuse of SDHR's discretion that prejudiced all parties" (Matter of New York State Dept. of Labor [Unemployment Ins. Appeal Bd.] v New York State Div. of Human Rights, 71 AD3d 1234, 1238-1239 [2010], lv denied 15 NY3d 714 [2010]).

In weighing the impact of this delay, we take note of the fact that the complainant will receive no financial benefit here, inasmuch as the order directs payment to the trustee in bankruptcy.  Although not in the record, it was represented at oral argument that Howarth is now deceased.  Furthermore, SDHR has made no effort to offer any explanation or excuse for this apparently unexplainable and indefensible delay.  There is no allegation that petitioner contributed to the delay, and the complaints presented issues that were relatively simple and straightforward.  Seemingly, the most difficult part of the matter would have been reconstructing the unrestored lost wages and benefits for the various times that Howarth was out of work. Rather than make these determinations, however, the Commissioner ordered the Comptroller to do so.  Nor is there any reason to believe that, with Howarth now deceased, the Comptroller will be able to gather the information necessary to determine these

amounts.[1]

Finally, the Commissioner directed petitioner to draft a new light-duty assignment policy and embark on a discrimination prevention training program for all of its employees.  As petitioner contends, however, this directive is based on petitioner's policy in effect two decades ago when the complaints were filed.  Its imposition now, without regard to petitioner's currently evolved policy and subsequent training, lacks support in the record and creates potentially expensive, time-consuming and unnecessary action by petitioner.  Under these circumstances, we find that there is substantial prejudice to petitioner occasioned by this intolerable delay.  Moreover, such delay is an abuse of SDHR's discretion, and its determination must be annulled (see Matter of New York State Dept. of Labor [Unemployment Ins Appeal Bd.] v New York State Div. of Human Rights, 71 AD3d at 1238-1239; Matter of Heller v Chu, 111 AD2d 1007, 1008-1009 [1985], appeal dismissed 66 NY2d 696 [1985]).  The remaining arguments are academic.

Peters, P.J., Garry, Devine and Clark, JJ., concur.


ADJUDGED that the determination is annulled, without costs, petition granted and complaints dismissed.



ENTER:

Robert D. Mayberger
Clerk of the Court

---

[1]  Although the Commissioner cited no statutory or other authority giving her the power to order the Comptroller to conduct yet another administrative inquiry to gather the necessary information, we need not decide this issue as we are annulling the Commissioner's determination on other grounds.