[911 NYS2d 199]

In the Matter of DMN MANAGEMENT SERVICES, LLC, Doing Business as CAPITAL LIVING AND REHABILITATION CENTERS, et al., Respondents, v RICHARD DAINES, as Commissioner of Health, Appellant.

Third Department, November 4, 2010

APPEARANCES OF COUNSEL

*Andrew M. Cuomo, Attorney General*, Albany (*Kate H. Nepveu* of counsel), for appellant.

*O'Connell & Aronowitz*, Albany (*Cornelius D. Murray* of counsel), for respondents.

**OPINION OF THE COURT**

GARRY, J.

Petitioners, limited liability companies who own and operate several residential health care facilities, participate in the Medicaid program (*see* 42 USC § 1396 *et seq.*; Social Services Law § 363 *et seq.*) and are prospectively reimbursed by the Department of Health for property and capital costs based on cost reports submitted by the facilities for a prior base period (*see* Public Health Law § 2808 [2-b] [f]; 10 NYCRR 86-2.10 [b] [1] [i]; [g]). Between 1999 and 2005, petitioners' predecessor in interest filed a series of "negative" rate appeals (*see* 10 NYCRR 86-2.14) seeking revisions in its reimbursement rates for 1999 and subsequent years as the result of mortgage refinancing. In 2007, the Department acted on these appeals and simultaneously notified petitioners that it had discovered an unrelated error in its calculation of petitioners' real property equity for the years 1998, 1999, and 2001. Accordingly, the Department reduced petitioners' reimbursement rates for those years. Petitioners commenced this proceeding pursuant to CPLR article 78 seeking to annul the Department's determination as to the reimbursement rate for 1998, the only year that was not included in their negative rate appeals. Supreme Court granted the application, and respondent now appeals.

The essential facts are not in dispute. The parties agree that the Department accidentally failed to enter certain figures derived from the facilities' cost reports in the appropriate section of its rate computation sheets, resulting in a miscalculation of the 1998 reimbursement rate for the affected facilities. The parties' dispute is limited to the timeliness of the Department's effort to recover the resulting overpayment.

The state and its administrative agencies have a common-law right to recover unauthorized or improper payments (*see Matter of Soto [Catherwood]*, 35 AD2d 395, 396 [1970]). Where, as here, a rate miscalculation results from computational or technologi-

cal errors that do not involve the exercise of judgment, this common-law right may be exercised retroactively to adjust Medicaid reimbursement rates and recoup overpayments from providers (*see Matter of Westledge Nursing Home v Axelrod*, 68 NY2d 862, 864-865 [1986]; *compare Matter of Daleview Nursing Home v Axelrod*, 62 NY2d 30, 34 [1984]; *Matter of Jarrett v Novello*, 27 AD3d 973, 974 [2006], *lv denied* 7 NY3d 715 [2006]). However, Supreme Court determined that recoupment was unavailable in this case as the 1998 reimbursement rate had become final several years before the discovery of the error and subsequent rate readjustment and attempted recovery in 2007. We agree and affirm.

The relevant regulations provide that the statistical and cost reports on which reimbursement rate calculations are based are subject to audit for six years after the reports are due or filed (*see* 10 NYCRR 86-2.7; 18 NYCRR 517.3 [a] [2]). Facilities are required to retain their books, records and other relevant documentation throughout that period (*see* 18 NYCRR 517.3 [a] [1]). The period is tolled when an audit is noticed or begun before it expires, but when six years have elapsed, no audit may be noticed or commenced (*see* 18 NYCRR 517.3 [c], [d]). Reimbursement rates are provisional until an audit is completed or, if no audit is noticed or commenced, until the six-year period has elapsed, at which point the rates become final (*see* 18 NYCRR 517.3 [a] [1]) and the provider becomes entitled to payment (*see Matter of Cortlandt Nursing Home v Axelrod*, 66 NY2d 169, 178-179 [1985]; *cert denied* 476 US 1115 [1986]). It is undisputed that the Department did not notice or commence an audit of the cost reports on which the 1998 reimbursement rate was based prior to the expiration of the six-year period. Respondent thus concedes that the Department could not have commenced an audit for the first time in 2007, but contends that the time limitation applies only to audits and does not prevent exercise of the common-law right of recoupment to recover an overpayment that resulted from internal departmental calculations. Essentially, respondent argues that because the right of recoupment derives from the common law, the exercise of that right is not subject to any regulatory time limitation.

Whether the common-law right to recoup Medicaid overpayments may be exercised to correct a rate computation error after the rate has become final for auditing purposes appears to be a matter of first impression; previous cases examining the recovery of such overpayments have dealt with adjustments

resulting from timely audits (*see e.g. Matter of Westledge Nursing Home v Axelrod*, 68 NY2d at 864-865; *Matter of Cortlandt Nursing Home v Axelrod*, 66 NY2d at 173-177; *Matter of Teresian House Nursing Home Co., Inc. v Commissioner of Health of State of N.Y.*, 70 AD3d 1294, 1294-1295 [2010]; *Matter of Wells Nursing Home, Inc. v Novello*, 55 AD3d 1202, 1204 [2008]), or from errors discovered before the audit period elapsed (*see e.g. Matter of Daleview Nursing Home v Axelrod*, 62 NY2d at 32-33; *Matter of University of Rochester Strong Mem. Hosp. v Whalen*, 61 AD2d 867, 868 [1978], *lv denied* 44 NY2d 646 [1978]). However, the reasoning in these cases is premised, in part, on a direct relationship between the provisional nature of reimbursement rates and payments before audits have been completed and the Department's right to correct errors and recoup resulting overpayments. In holding that administrative delays did not bar the Department from recovering overpayments discovered during timely audits, the Court of Appeals observed that providers are "charged with the knowledge" that reimbursement rates may be adjusted as the result of cost report audits (*Matter of Cortlandt Nursing Home v Axelrod*, 66 NY2d at 178-179), and that until such audits are complete, providers' rights to Medicaid payments are "wholly inchoate" and "not proprietary" (*id.*; *see Matter of Westledge Nursing Home v Axelrod*, 68 NY2d at 864-865).[1] It follows logically that, when rates have become final for cost reporting purposes because audits have been completed or were not commenced before the limitations period expired, the provider's right to payment becomes vested, and the Department may no longer make readjustments or recover overpayments resulting from errors that could have been corrected by conducting an audit (*compare Matter of Jarrett v Novello*, 27 AD3d at 974; *Highbridge-Woodycrest Ctr. v Novello*, 304 AD2d 363, 363-364 [2003], *lv denied* 100 NY2d 512 [2003]).

The regulations further support this conclusion. The procedures for recovery and recoupment of Medicaid overpayments are established in 18 NYCRR part 518, which defines overpay-

---

1. Notably, in the course of determining that "patient review instrument" audits, which are conducted under a separate regulatory scheme (*see* 10 NYCRR 86-2.30), are not subject to the six-year time limitation here at issue, the Court of Appeals observed that, because the record did not indicate whether the reimbursement rates in question were final under the regulations governing cost report audits, its decision did not address whether timely patient review instrument audits could be conducted for time periods for which reimbursement rates had become final (*see Matter of Blossom View Nursing Home v Novello*, 4 NY3d 581, 596 n 10 [2005]).

ments, in part, as unauthorized payments resulting from mistake (*see* 18 NYCRR 518.1 [c]) and expressly provides that recovery of such overpayments, as pertinent here, is to be governed by the procedures applicable to cost reporting audits in 18 NYCRR part 517 (*see* 18 NYCRR 518.5 [a]).[2] Although we ordinarily defer to an administrative agency's rational interpretation of its regulations (*see Matter of Blossom View Nursing Home v Novello*, 4 NY3d 581, 594-595 [2005]), it is irrational for the Department to interpret a regulation that explicitly makes its recovery of overpayments subject to the procedures governing cost report audits in such a way as to excuse it from complying with the time limitations included in those procedures. Thus, Supreme Court properly concluded that the Department could not readjust petitioners' 1998 reimbursement rates or recoup overpayments after the rates had become final pursuant to 18 NYCRR 517.3 (a) and petitioners' right to payments had become vested.

MERCURE, J.P., MALONE JR., MCCARTHY and EGAN JR., JJ., concur.

Ordered that the judgment is affirmed, without costs.

---

2. 18 NYCRR 515.9 also provides that overpayments may be recovered under procedures not pertinent here, pertaining to sanctions imposed on providers for fraud, abuse, and other improper practices (*see* 18 NYCRR part 515).